Lovett v. Pell.

---

## LOVETT *vs.* PELL.

*Error* will not lie for a *misjoinder of counts*, in a declaration, e. g. adding a count in *assumpsit* to one in *covenant*, after issue has been taken upon each count and a general verdict found for the plaintiff; the defendant, if desirous to take advantage of the mistake of his adversary, should have demurred.

A special assignment of errors that the issues joined were not tried, is bad, as impeaching the record; a plea of *in nullo est erratum* to such assignment, operates as a *demurrer*, and not as a confession of the fact assigned as error.

Causes of action may be joined in a declaration which are of the *same nature*, admit of the *same plea*, and in which the *same judgment* can be rendered; and sometimes they may be joined though not admitting of the same plea: for instance, *debt on bond* may be joined with *debt on judgment*. *Per Chancellor Walworth.*

ERROR from the supreme court. Lovett sued Pell in the New-York common pleas, and declared in *covenant,* upon a *sealed* instrument, whereby the defendant guarantied the payment of rent to accrue upon another instrument executed by a third person. The plaintiff averred that two quarter's rent, amounting to $350, remained due and unpaid, which he claimed to recover. The declaration also contained the common money counts in *assumpsit.* The defendant pleaded *non est factum* to the first count, and *non-assumpsit* to the other counts. The jury found as to the *first* issue, that the instrument declared on was the *deed of* the defendant, and as to the *second issue,* that the defendnat *did promise,* &c, and they assessed the damages of the

plaintiff by reason of the breach of the covenant in the first count mentioned, and also by reason of the non-performance of the promises in the other counts mentioned, to $350,19. Upon which verdict judgment was rendered. The defendant removed the record into the supreme court by writ of error, and besides the *general* assignment of errors, assigned for error *specially*, that the issues joined in the court below *were not tried*. The supreme court *reversed* the judgment of the common pleas; whereupon the plaintiff below removed the record into this court. See opinion delivered in the supreme court, 19 *Wendell*, 546. The case was argued here by

*P. A. Cowdrey*, for the plaintiff.

*D. Selden*, for the defendant.

After advisement, the following opinions were delivered:

By the CHANCELLOR. The assignment for error, that no such verdict was given as stated in the record, no diminution being alleged, was not admitted by the joinder in error; it being an assignment against the record itself.

There can be no doubt that there was a misjoinder of counts; for *covenant* cannot be joined in the same declaration with *assumpsit*. The cases on the subject of the joinder of different causes of action are so numerous, and at times so conflicting, that it is difficult to find any general rule which is applicable to all of them. I think, however, I may safely say that if the causes of action are of the same nature, admit of the same pleas, and the same judgment would have beeen entered thereon at the common law, they may be joined; and there are some cases in which they may be joined although they do not admit of the same plea, as in the case of debt upon bond, and debt upon judgment or upon a *mutuatus*. There is also one anomalous case, in which it is held there may be a joinder of debt and detinue, although these two causes of action require different judgments. *Bacon* states the reason why these may be joined

to be, that a writ was found in the register in which they were both comprised. 1 *Bac. Abr.* 58, *7th Lond. ed.* To this register of original writs, the different fines payable to the crown upon suing out the original and the different process founded thereon originally, might probably be traced the separation of different causes of action, which might now apparently have been joined in one suit, without any difficulty. It is well known to the profession who have traced back the common law to its source, that after the *aula regis* was broken up, and the four great courts of chancery, king's bench, common pleas, and exchequer were established in its place, the jurisdiction of the three common law courts was parcelled out to them by the original writs issuing out of the court of chancery; which were framed by the clerks of that court to meet the different kinds of action then in use, and adapted to the different modes of proceedings in actions of tort and actions upon contract, &c. And as no new suits could be commenced except in conformity to the writs or precedents entered in the register, until the statute of 13th Edward I, which authorized the court of chancery to meet new cases, it was perfectly natural that the various actions of debt, covenant, account, detinue, trespass, &c. should have been kept separate and distinct, from assumpsit and other actions on the case, which were founded upon the new original writs that were subsequently devised. One thing at least is certain, that covenant and assumpsit have always been considered as actions distinct in their natures, and have never been joined in the same suit; and I believe I may also say, they have never been successfully joined with a count in any other form of action. The case of *Hallock* v. *Powell,* 2 *Caines' R.* 216, referred to upon the argument, certainly does not form an exception, as the reporter manifestly has made a mistake in stating the case. Although the defendant pleaded non assumpsit to one of the counts in that case, Mr. Justice *Livingston* says he might have pleaded not guilty to both counts, as the breach assigned was a deceit in delivering a deceased horse, after undertaking to deliver one that was sound; and Mr. Justice *Van Ness* stated that

he had examined the counts in that case, and they were both in deceit. I presume the one count charged that the defendant promised that the horse was sound, knowing him to be unsound; and that the other charged that he warranted him sound, knowing the fact to be otherwise; grounding his action upon the fraud and deception, instead of the promise. As there was a clear misjoinder of counts in the present case, it remains to be seen whether it was a matter of form which was cured by a statute of jeofails.

There is a class of cases in which a misjoinder of different causes of action, and the assessment of general damages thereon, must necessarily produce an erroneous judgment, so as to deprive the defendant of some substantial right: such are the cases of a joinder in a suit against a husband and a wife, of a count for a debt due from the wife while sole, with a count for a debt contracted during coverture, for which she could not be legally liable; and the joinder of a count against an executor or administrator for a debt due from the decedent, with a count for a debt due from the defendant personally. But in a case where the judgment is right as to all the counts, or would have been so if the recovery had been in separate suits, I had supposed, until I found otherwise upon examination, that the broad language of the first section of the statute 16 and 17 *Charles II. ch.* 8, to prevent arrests of judgments, &c., which is incorporated into our revised statutes, as well as into the revision of 1813, would have protected the plaintiff *after verdict.* I regret that I am obliged to say, however, that the law appears to have been settled otherwise, not only in our own courts, but also the courts of England, both before and since the revolution. Had I found only the single case of *Cooper* v. *Bissell,* 16 *Johns. R.* 146, I should not have hesitated to have said of it, as Lord Ellenborough said of the case of *Bage* v. *Brownell,* 3 *Lev.* 99, "that case has had its day, and it is time it should cease." *See Kightly* v. *Birch,* 3 *Maule & Sel.* 533.

The case of *Mathews* v. *Hopping,* the carrier of Tiverton, decided in 1665, cited by the counsel in *Denison* v. *Ralphson,* 1 *Ventris,* 365, as a case sustaining the principle

Lovett v. Pell.

that a misjoinder of counts was *cured* by verdict, turns out to be directly the other way. By a reference to that case, as reported both by *Siderfin* and *Keble*, it will be seen that upon a motion in arrest after verdict, the court held that there was a misjoinder of counts in *assumpsit* and *trover*, and arrested the judgment, notwithstanding the verdict. *See* 1 *Siderf.* 244 ; 1 *Keble*, 852, 870. The case of *Bage v. Brownell* is the one overruled by Lord Ellenborough, as having had its day ; and I only refer to it now for the purpose of showing with what pertinacity the courts held to the rule that a misjoinder of counts was an error of substance, even after the statute 16 and 17 *Charles* II. In that case counts for *trover* and *assumpsit* were joined in the same declaration ; and although the jury had found a verdict for the *plaintiff* on the one count, and for the *defendant* on the other, thereby completely severing them, the court still considered themselves bound to arrest the judgment. In the similar case of *Holms v. Taylor*, 3 *Keble*, 302, 335, the judges differed in opinion as to the effect of a severance by the jury, though they all agreed that the judgment must have been arrested, if the verdict had been in favor of the plaintiff upon *both* counts. In the case of *Dalston* v. *Janson*, in 1695, 5 *Mod. R.* 91 ; 1 *Salk.* 10 *S. C.*, the judgment was arrested after verdict, for a misjoinder. So in *Bridgen* v. *Parkes*, in 1801, 2 *Bos. & Pul.* 424, the court of common pleas in England held that a misjoinder of counts was bad on general demurrer ; and they also said it might be alleged in arrest of judgment, or assigned for error. In 1827, in the case of *Corbitt* v. *Packington*, 3 *Barn. & Cress.* 268, the court of king's bench arrested the judgment after verdict, for a misjoinder of counts in *case* and *assumpsit*. And in the still more recent case of *Comee v. Shaw*, in 1838, 1 *Hom. & Hurl. R.* 65 ; 3 *Mees. & Welsb.* 350, *S. C.*, the court of exchequer arrested the judgment after verdict for a misjoinder of counts. In this last case upon a subsequent application for a *venire de novo*, to enable the plaintiff to have the damages assessed severally, so that they might be remitted as to some of the counts, the court decided that the granting or refusing a *venire de novo*, was a matter of

duty, and not a matter of favor; and that it was not proper
to grant it in such a case.    1 *Hom. & Hurl.* 215. In addition to these English cases, which appear to have continued
in an unbroken current from the time of the passing of the
statute 16 and 17 *Charles* II., to the present time, and to the
decision in our own state twenty years since, the courts of our
sister states of Pennsylvania and Kentucky have made similar decisions in the cases of *Strobecker* v. *Grant*, 16 *Serg.
& Rawle*, 237, and of *Carstarphin* v. *Graves*, 1 *A. K.
Marsh. R.* 435.    And as I have not been able to find any
provision in the revised statutes in reference to this subject
broader than the provisions of the former statutes of jeofails,
when taken together, I think we cannot reverse the judgment
of the supreme court without changing the settled law of the
land.    I am therefore compelled to vote for an affirmance of
that judgment.

By Senator VERPLANCK.    The judgment obtained in the
New-York common pleas upon verdict was reversed by the
supreme court, on the rigid technical rule that counts in
*covenant* cannot be joined with counts in *assumpsit,* and
that such a *misjoinder* of counts may be taken advantage of
on a writ of error, as well as on demurrer.    The English
books of pleading and practice are strong to this point; so,
too, are many formerly adjudged English cases.    It was
also so decided, though quite reluctantly, and with expressions of regret, by our own supreme court before the revision of the statutes. 16 *Johns. R.* 146. In this appellate court,
it has never been adjudicated in any way, or even formally
recognized; and accordingly, especially since the revision of
our statute law, may be considered as here an open question.

1 am decidedly of opinion that the case of misjoinder of
counts, whereby (to use the language of our statute) " neither
party has been prejudiced, and no result has been produced
against the right and justice of the matter of the suit," is
within the provisions of our lately revised law "for amending pleadings and proceedings."    It is there enacted, that
" when a verdict shall have been rendered in any cause,

the judgment thereupon shall not be reversed, impaired or affected " for various technical defects there enumerated, one of which is *mispleading*. I think, that according to the sense and intention of our enlarged statute of amendments, *mispleading* includes within its sense a *misjoinder of counts*. The word is frequently employed in a narrower sense ; but it may very well be used with various degrees of latitude, since the word *pleading*, on which it is formed, is used with still greater. Neither that word, nor its derivative, *mispleading*, are words of precise definition and unvarying meaning, but are understood with more or less latitude, according to the context, and the intent and object for which they are used. "Pleading" says *Tomlins*, "in a large sense, contains all the proceedings from the declaration until issue joined ; but in its immediate sense is taken for the defendant's answer to the declaration." *Toml. Law Dict. Pleading*. Mispleading, in its immediate, and I suppose more usual sense, signifies essential errors or ommissions in the defendant's defence ; but it is also expressly defined to comprehend "any mistakes or omissions, essential either to the action of defence, occurring either in the declaration or the subsequent pleadings." *See* 2 *Tidd's Prac.* 954. According to this larger and broad sense, the word must comprise, as one species of mistake essential to the action, such a misjoinder of counts as would be bad on demurrer ; and it would fall strictly within the intention of our statute, that such a mistake should be cured after verdict, when no prejudice has been done by it to the substantial justice of the cause and the rights of the parties.

Let us look at the subject in another light. *Mispleading*, according to its etymology and natural meaning, means *pleading amiss*, or pleading wrongly. This is the well known familiar use and derivation of the word. But in so technical a point, and arguing against high technical authorities, I will not rest my interpretation upon the known use and etymology of untechnical words. I go to authority, and take the definition of one of the oldest and best expounders of legal phraseology : " *Mis.* (*Cowel's Interpreter.*) This syllable, added to another word, signifies some fault

or defect." *Mis-docere,* mis-teaching, i. e. to teach amiss. *Presbyter populum non mis-doceat.*" But " pleadings," says Blackstone, " are the mutual altercations between the plaintiff and the defendant. The first of these is the declaration." *3 Black. Comm.* 203. Does it not then follow, that in the natural and truest sense of the word *mispleading,* it comprehends misdeclaring, whether the error be in the separate counts, or in the improper joining of them ? I admit that this goes beyond the interpretation previously given by the courts to the old statutes which have been embodied in our revised statutes. The decisions on which the supreme court have rested their opinion, are either old authorities, or those governed by the binding force of older cases.* But if this question could now be presented anew in the English courts, (as under the recent revision of their pleadings and practice it cannot well be,) it is obvious what would be the interpretation of the English courts at the present day.

The statute of William IV., under which the judges have remodelled the pleadings and practice, authorizes the judges " to make such alterations in the mode of pleading, and in the mode of entering and transcribing pleadings," as may be necessary for the objects of the act. Under this authority, the whole body of English judges have formed their " new rules of pleading." The 5th of these rules is wholly confined to regulating in detail what counts in pleading may be allowed to stand together: and what not, in other words, what counts may be joined, and when a plaintiff shall be confined to a single plea. *See Bosanquet's ed. of The New Rules.* Such is the unanimous understanding of the word *pleading* among the present English judges, shewing that a contravention of their fifth rule, by mis-joining counts, would be considering a *mis-pleading.* In this sense the action of the judges under the statute, is understood by Mr. *Chitty* who says: "Under the authority of the act of William IV., which enabled the judges to promulgate rules *affecting pleadings,* several very important rules relating to *declarations* and pleadings have been made." *3 Chitty's Prac.* 454. Why should we be behind the judges of England in discarding cumbrous, technical difficulties and ab-

Lovett v. Pell.

surdities ? Why should we not expound our revised statutes of amendments in the same liberal and right spirit, that they have applied to the act of parliament for regulating their practice ? Another strong proof of the intent of the legislature in their use of the word mispleading, may be found in the context of the same provision. It provides that no judgment after verdict shall be reversed or impaired by reason of any mispleading, insufficient pleading or *misjoining of issue.* Now one of the forms of misjoinder of issue would seem to be that of a double issue, such as must result, as here, from a misjoinder of incompatible counts. It is true that the words *misjoinder of issue,* may not cover the whole ground in this case, so as to apply to the previous misjoinder of counts, and thus the statute would go only to cure the double issue and not the error that led to it; but they are very important to shew the spirit and intention of the act, and the nature and character of the formal obstructions to justice, it was meant to cure. Taking together the two phrases, *mispleading* and *misjoining* of issue, the whole ground is covered, if it be not, as I think it is, by the former phrase alone.

I would not venture to disturb decisions of equal authority with those which support the supreme court decision, where they go to establish any rule of property, or to regulate personal rights, although I should judge them to be founded upon arbitrary or artificial reasons. Such decisions enter largely into the concerns of men. They become interwoven with the whole body of the law, and are silently recognized in the mangement of affairs, by citizens of all classes, as well as by lawyers and courts. Not so with a pure formal question of pleading. The overruling prior decisions on such a point, when the substantial ends of justice are thereby promoted, can influence no other question save those of legal form.

This is a new question in the highest tribunal of this state. It now arises under a statute not new in its objects, but re-enacted here recently with enlarged provisions and in "language," as the revisers said, intended to rescue those provisions from the verbiage in which they were enveloped;

thus manifesting a freer and more equitable spirit than heretofore, in remedying " technical imperfections, variances, defects, omissions and all other errors of the like nature." I therefore deem it proper to construe this act in the same wise and liberal intent in which it was passed. We ought to reject what *Blackstone* calls " the scrupulous obstinacy and literal strictness " of the ancient English judges who narrowed every legislative effort to liberalize their practice, by the strictest construction they could give ; and did not yield till twelve successive enactments had been found necessary to cure them " of their unreasonable degree of strictness." By such a construction as I contend for, we shall promote the great objects of justice in every case where it can be applied ; and this without making any hasty innovation upon the rules and forms of pleading. A misjoinder of counts will still be incorrect ; and if it works any manner of inconvenience, the defendant may obviate that by demurring or pleading in abatement. If he omit to do so and voluntarily joins issue incorrectly, he ought not to be permitted to lie by, to see the result of his case before a jury, and then come in and overturn verdict and judgment by taking advantage of an error not touching the merits of the controversy, and which he has himself promoted, since it could not have gone on without his own aid and participation. This is surely one of the kind of defects, that it was the object of our statute of amendmends to remedy. I think, therefore, we should not hesitate to reverse the judgment of the supreme court on this head.

The supreme court appear not to have noticed the other ground on which the reversal of the original judgment below, was maintained before us ; I presume that it was considered wholly untenable. The books shew that it is so. The position is that the plaintiff in error in the supreme court having specially assigned as error, that the issues never were tried as set forth in the record, and the defendant having by his joinder in error confessed the fact, the record and proceedings of the common pleas must therefore be allowed to be erroneous, although in fact the issues were joined and the verdict found. But the authorities read thus :—

in a *per curiam opinion* of our supreme court, Judge Suth-erland says; " if the assignment is bad, as impeaching the record, the defendant can avail himself of that objection under the general plea of *in nullo est erratum.* So if an error in fact that is not assignable be assigned, and *in nullo est erratum* is pleaded, it is no confession of it : as if it be assigned, that the court was not sitting on the day when the judgment purported to have been given, because that is against the record, and in such case, *in nullo est erratum* is only a demurrer." 7 *Wendell,* 56. But the error assigned was not assignable. " A man cannot allege diminution contrary to the record which is certified." 2 *Saunders,* 1019. " Nothing can be assigned for error which contradicts the record." *Per Chief Justice Savage,* 9 *Wendell,* 126. The record is the highest evidence of the facts, and it is not to be presumed to be false from a mere inference of plead-ing. If there had been any such error beyond some trivial matter of form, it could be impeached or corrected in the court below.

Substantial justice between the parties appears to have been done in the court where the cause was tried. The two very artificial reasons for reversal are of a character never entitled to peculiar favor; and seem to me quite in-sufficient—the one last considered because it is against all ancient and modern authority; the other as against the equity and policy of our revised statutes. I shall accord-ingly vote for reversing the judgment of the supreme court.

On the question being put, *shall this judgment be revers-ed?* the members of the court divided as follows :

*In the affirmative :* The PRESIDENT of the Senate, and *Senators* BEARDSLEY, DICKINSON, FURMAN, HAWKINS, HULL, HUNT, HUNTINGTON, JOHNSON, H. A. LIVINGSTON, MAYNARD, MOSELEY, NICHOLAS, PECK, SKINNER, STERLING, VERPLANCK —17.

*In the negative :* The CHANCELLOR, and *Senators* PAIGE, SRAKER, WAGER—4.

Whereupon the judgment of the supreme court was *re-versed,* and the judgment of the common pleas AFFIRMED.