This case is reported, ante, p. 164. The following .dissenting opinion of Justice Jones was not received in time to be inserted in its proper place:
Jones, J. (dissenting.)
The complaint alleges that the plaintiff hired a portion of the fourth floor of certain premises for a term from September 24, 1866,- to May 1, 1867, and took possession thereof and stored sundry goods therein; that on the 14th of February, 1867, the' defendant, vi et armis, broke and entered into said premises then in the actual and lawful possession of him, the plaintiff, and then and there broke and destroyed a certain partition of the plaintiff; and also then and there, vi et armis, seized and took divers goods of the plaintiff then and there being, of the value of §1500, and threw the same out of said premises, to their great damage, and carried away the same and converted and disposed thereof to his own use; and then and there ejected the plaintiff from the premises and the possession and enjoyment thereof, and hath kept him so ejected; that by reason of such wrongful, tortious and unlawful acts and trespasses, he the plaintiff wholly lost all of his said property, goods and chattels, and has been deprived of the use and enjoyment of his said premises, and has been damaged to the "amount of §2500.
The answer contains a general denial; and then sets up as a defense that the plaintiff hired the premises in question from one Townsend, who was lessee thereof for a term expiring November 1, 1866; that on the first December, 1866, Townsend surrendered and delivered up the premises to his landlord; that afterwards, in February, 1867, *650 the defendant, as agent and by authority of the said landlord, requested and notified the plaintiff to remove from the premises, and to take away his goods, and that in default thereof the said landlord would charge and claim from the plaintiff at the rate of eight dollars a month for storage of said property as long as it remained there, “ but at the same time not only not giving the plaintiff any permission to keep it there, but distinctly forbidding him to do so;” that the plaintiff did not comply with this request, although he promised to do so, and in the meantime to pay storage on said goods at the rate of eight dollars a month; that subsequently the defendant, as the agent and by the authority of the landlord, in said month of February, 1867, again notified the plaintiff to remove from said premises and take away said goods, and requested him to do so, and to pay storage at the rate aforesaid; but the plaintiff refusing to do so, the defendant carefully, and without doing any damage thereto, removed said goods from said premises to another portion of the same building, as he lawfully might, for the causes aforesaid, and thereupon notified said-' plaintiff and requested him to take away said goods, which he neglected and refused to do.
The case made by the defendant on the trial was that . certain premises, whereof those in question were part, had been originally leased to one Townsend in September, 1866, for the remainder of that month.and October, and at the end of October for the next month; that on the first of December Townsend gave up the premises; that Townsend sublet the portion in question to the plaintiff •for the time that he, Townsend, would remain, at the rate of eight dollars a month; that shortly after Townsend, left, the defendant met the plaintiff on the stairs of the building and said to him, “Mr. Colton, Mr. Townsend has gone, and of course, we will expect rent from this place.” *651 He said, “ I will pay you the same as I have been paying Mr. Townsend if you let me store my goods up there, and as soon as you find a tenant I will move them out.” Under this arrangement the plaintiff" remained. Subsequently the defendant rented the floor to a society, which wished the plaintiff’s goods to be removed; the plaintiff made repeated promises to remove them, but not fulfilling them the defendant entered into the premises on February 14, 1867, and caused the goods to be removed into his own apartments, where he retained possession of them. On the 18th of February the plaintiff" demanded the goods of the defendant, who refused to deliver them unless sixteen dollars storage was paid, being for two months, at eight dollars a month; that in all the above matters the defendant was the agent duly authorized of his mother. There was contradictory evidence as to the value of the goods.
The court decided that the only question to be submitted to the jury was one of damages. Counsel for defense requested the court to charge the jury—
First. That under' the agreement between Jones and Townsend, as testified to by Townsend, the latter ought to leave at the end of any month; and if the jury believed that Townsend notified the plaintiff of that agreement when he underlet to him, when Townsend surrendered the premises, the rights of the plaintiff, as his under-tenant, also ceased, and he thereafter had no right to the possession of the premises as under-tenant of Townsend. The court refused so to charge, under the view taken by the judge of the law in this case. The defendant excepted.
Second. That if the jury believed that Townsend surrendered the premises to his landlord, and the plaintiff was notified thereof, and thereupon the agreement testified to by the defendant as to the storage and removal of *652 the goods was made, the defendant, after letting the premises to the Delta Kappa Lambda Society, and after notice to the plaintiff to remove the goods, had a right himself to remove the goods without liability for damage, unless he injured the goods in removal, and the defendant was not,'nor was Mrs. Jones, obliged to take any legal proceedings to get possession. The court held that the conversation testified to by the defendant did not amount to an agreement as to storage, so as to entitle the defendant to a lien therefor, and declined to so charge, and refused to submit any question to the jury except that of damages. (The defendant’s counsel took exception.)
Third. That if the jury believed the plaintiff promised to pay storage, as testified to by the defendant, the latter had a right to detain the goods until the storage was paid, pfovided they also believed that when the demand was made on the defendant he stated, as testified by him, that .the plaintiff could not have the goods until the storage was paid. (The court refused so to charge, and the defendant’s counsel took exceptions.)
Fourth. That if the jury believed that subsequently the plaintiff agreed "to pay eight dollars a month storage for the goods, as testified by the defendant, the defendant’s mother, for whom he was acting, had a lien for that storage on the goods in question, and had a right to detain them until the storage was paid. (Same ruling and exceptions.)
Fifth. That if the defendant rightfully entered and removed the plaintiff’s goods from the premises in question, this action, in the form in which it is brought, cannot be maintained, even if the defendant subsequently wrongfully refused to let the plaintiff have Ms goods. (The court refused so to charge, and the defendant’s counsel took exception.)
The judge charged the jury that the only question for *653 them to consider was the amount of damages which the plaintiff was entitled to recover from the defendant. In determining that question they should be governed by the evidence before them, and tiot by any judgment of their own, as to the value of the goods. At the same time they had a right to look at all the testimony as affecting the credibility of the witnesses; and if they were satisfied that the evidence furnished on the part of the plaintiff was not credible, it was their duty to disregard it. The only evidence given by the defense, as to the value, was that of Mr. Brown, who did not seem to" be acquainted with this specific kind of property, but had dealt in cots of a similar kind. They should take his testimony into consideration, and at the same time scrutinize the evidence of Mr. Colton for the purpose of ascertaining whether his testimony was to be credited; and then render a verdict for such an amount as they should find to be the value of the property at the time a demand was made by the plaintiff" for its delivery. ■
The jury found a verdict for the plaintiff for $1153. The court ordered all the exceptions aforesaid to be heard in the first instance at the general term,- and that judgment be in the meantime suspended.
It is evident that the learned judge regarded the complaint as containing an independent cause of action in trover, for the unlawful conversion of the plaintiff’s goods by the defendant. In this view he allowed the plaintiff to recover for the value of his goods, solely on proof of a demand for the goods, made on the 18th of February, 1867, and a refusal to comply with the demand, restricting the amount of the recovery to the value of the property on the day of the demand, and withdrawing from the consideration of the jury the transaction of the'14th of February, respecting the unlawful entrance into the plaintiff’s premises, and the matters connected therewith.
*654 If this view be incorrect, then the judgment should be reversed; for unless there is a cause of action in the complaint, which this proof of a demand and refusal on the 18th of February supports, then the judgment is rendered on a cause of action not supported by the proof, and there is a failure of proof. (Code, § 171.) The fifth request sufficiently raises the question as to the correctness of the view of the judge; for, if incorrect, he should have charged as therein requested.
This leads to a consideration as to what cause of action is alleged in the complaint. The complaint alleges that on or about the 14th of February the defendant, with force and arms, broke into his premises, and then and there, witht force and arms, seized and took his goods and threw them out of his premises, and carried them away and converted and disposed of them to his own use. Any fair construction of this language can lead to but one result; to wit, that there is but one cause of action here alleged, which is for the violent and forcible acts of the defendant at the time of the breaking into the plaintiff’s premises. There' is but a single act of trespass alleged. It is, in effect, that the defendant forcibly broke, into the plaintiff’s premises and carried off his goods, and by that act converted them to his use. The words “ and then and there” show that the pleader avers the seizing of the said goods as part of the trespass in breaking into the close, and also that the conversion pleaded took place at the time of the trespass, and consisted in seizing the goods, and is averred as the legal incident to that act.
This view was taken and always acted on by the profession and the courts in respect to similar allegations in a declaration in an action quare clausum fregit. The words “ converted and disposed of to his own use” were regarded as referring to the act of trespass in taking them, and as being alleged simply as the incident to that act. *655 (Taylor v. Cole, 3 Term Rep. 292. Per Buller and Grose, JJ.) Indeed, if they had been regarded as setting out distinct causes of action from that arising from the act of trespass in taking, the declaration would have been bad under the former rules of pleading. (Cooper v. Bissell, 16 John. 146.)
That this was the former rule of pleading, the case of Lovett v. Pell (22 Wend. 369) does not dispute. The fact, then, that a declaration in quare clausum, fregit, containing these words, was nevertheless regarded as good, shows that these words, taken in the connection in which they were used in those declarations, were understood and construed as referring to a conversion by force of the alleged act of trespass in taking them.
True the Code has abolished forms of action, and forms of pleadings, and many of the rules applicable thereto ; but it has not abolished the force and meaning of language. The force and meaning of such language as is used in this complaint has been taken, for a long period, to be such as I have given, and as I regard its natural and obvious import; and it is because such is its natural and obvious import that its force and meaning has always been regarded to be as I expound it.
But it is said that the words “ converted and disposed of to his use” is a sufficient allegation of a cause of action for the conversion of a chattel. When used in certain connections this may be so, as in Decker v. Mathews, (12 N. Y. Rep. 313.) Their force, however, must depend on the connection in which they are used. When that connection shows that they are used simply as alleging “ a conversion and disposition to his own use,” by an act of trespass in taking, then such act of the trespasser becomes an essential ingredient in the cause of action; and if it be not proved, there is a failure to prove the. cause of action in its entire scope.and meaning. (Code, § 171.)
*656 It is, however, suggested that if one or more of the allegations contained in a complaint be proved and constitute a cause of action, such judgment as that cause of action calls for must be given, and the other allegations in the complaint may be disregarded.
As a general proposition, perhaps this is correct. But its application is always subject to inquiry as to what are the allegations contained in the complaint. It is sought to apply this doctrine to the present case thus: It is said the complaint contains the words “ converted and disposed thereof to their own, said defendants’, use.” This is claimed to be an independent allegation, constituting a cause of action for a conversion, distinct from the previous allegation of a trespass in taking the goods. And then it is said there is proof to support this cause of action for a conversion, to wit, proof of a demand and refusal on the 18th of February, and therefore the judgment should be affirmed. I admit the words in question are contained in the complaint, but deny the results claimed to ensue therefrom. These words are but part of an allegation, consisting not only, of these but of many others in connection with them. To ascertain what is alleged, the whole must be taken together. I have already discussed the force and effect of these words, when thus taken in connection, and have arrived at the conclusion that the allegation in the complaint is of a conversion of the goods by means of an act of trespass in taking them.
It must necessarily be conceded that if we are at liberty to pick out of a complaint a sentence here, a seiitence there, a word here, and a word there, and then, disregarding every thing else, mold and weave the words and sentences together in proper sequence and with proper punctuation, arriving, as a result, at allegations sufficient to constitute that cause of action which the testimony has proved, then assuming the allegation “on or about 14th February, *657 1867,” to be sufficiently comprehensive to cover the 18th of February, a cause of action sustained by the proof of demand and refusal may be framed out of the words and sentences contained in the complaint. But I do not understand it to be contended, or even intimated, that a complaint may be thus dealt with.
Again; it is contended that the defendant had notice by the complaint that the plaintiff meant to endeavor to prove it, and he was bound to be prepared to prove it. Meant to prove what ? A conversion disconnected from the act of trespass in taking ? I deny it. On the contrary, in the view I take of the complaint, the only notice it gave him was that the plaintiff intended to prove a conversion connected with and flowing from the act of trespass in taking the goods.
It is further suggested that the defendant should have moved to make the complaint more definite and certain. I see no ground for such a motion. The complaint is definite and certain as it stands, and can be made indefinite, in my judgment, only by an unwarranted construction.
The last suggestion is that no harm has been done the defendant. I am unwilling to aid in establishing the doctrine that a verdict rendered against a' defendant in spite of his objection duly and properly taken, for a cause of action on which he has been' sued, may be sustained because the court above thinks no harm has been done him. This is carrying the doctrine that immaterial errors on the trial may be disregarded, to a greater extent than I am willing to go.
The judgment in question having been rendered against the defendant, contrary to his objection duly taken, for a cause of action on which he was not sued, should not be permitted to stand.
I am in favor of reversing the judgment and ordering a new trial, with costs to the appellant to abide the event,