1841.

The Farmers' Fire Insurance and Loan Company *v.* Edwards.

A *tender* of a debt secured by mortgage, *after the day* stipulated for its payment, is equally effectual to remove the lien of the mortgage from the land as a tender *at the day*, provided it be made *before foreclosure;* and the *mortgagee,* if in possession, may, *after the tender,* be ousted by the *mortgagor.*

Where a mortgage was executed to an *incorporated company,* by whose charter provision was made, that in all cases where the corporation should become the purchasers of real estate, on which they had made loans, that the mortgagors should have the right of redemption, on payment of the principal, interest and costs, *so long as it remained in the hands of the corporation unsold :* It was Held, that a mortgagor's right of redemption continued, notwithstanding a contract for the sale of the mortgaged premises had been entered into by the corporation with third persons, one third of the purchase money paid, and possession taken by making surveys, &c.; that such right could be extinguished only by the execution and delivery of a deed of conveyance to the vendees.

A purchase on the foreclosure of such a mortgage by an *agent* of the company, is a purchase by the *company* within the meaning of the act of incorporation.

To the two first propositions, see the *dissenting* opinion of the Chancellor.

ERROR from the Supreme Court. The defendant in error brought an action of ejectment in the court below to recover the possession of certain premises situate at Black Rock in the county of Erie, bought in by the President of the Insurance and Loan Company, on the 27th August, 1834, at a sale by virtue of a foreclosure of a mortgage, executed by the defendant to the Company, and for the amount of the bid made by the president, the master took the receipt of the company. By a provision in the act of incorporation of this company, in all cases where the corporation become the purchasers of any real estate on which they have made loans, the mortgagors have the right to *redeem* the property on payment of the principal, interest and costs, so long as it *remains unsold*, in the hands of the corporation. In this case, a loan of $15,000 had been made to Edwards. On the 25th June, 1835, the

company having made a statement, exhibiting a balance of $10,024.67 as still due to them, Edwards made a *tender* of $10,500 in redemption of the lands purchased by the president of the corporation, and offered at the same time to pay any further sum that might be necessary to satisfy the principal, interest and costs that might be due to the company, and demanded the execution of a conveyance, releasing and conveying to him the lands so purchased by the president, and for that purpose tendered a deed to be executed. The president declined to receive the money and to execute the conveyance, alleging that the company had entered into a contract to sell the lands; and it was accordingly shown on the trial of the cause, that on the 17th *March*, 1835, articles of agreement were entered into between the company and W. T. and I. Merritt, whereby in consideration of $13,000, to be paid by the Messrs. Merritt, the company covenanted to grant and convey to them the premises purchased by the president at the mortgage sale; the conveyance to be executed within a reasonable time *after the legal title in the premises should be vested in the company*: in whom the whole of the *equitable estate* was then declared to be vested. The Messrs. Merritt, on their part, covenanted to pay the $13,000; one-third on the first day of *May*, 1835, and the residue in five years, to be secured by bond and mortgage; and the articles contained a stipulation that they might take immediate possession, and receive the rents and profits. The reason why a conveyance was not immediately executed was, that the property had been conveyed to the president of the company, in his *individual name*, and he had died in the month of *February*, preceding the date of the contract, without having conveyed to the company. In the purchase of the property, he acted as the *agent* of the company. On the 1st of April, 1835, the Messrs. Merritt *paid the first instalment* provided for in the contract, and on the 3d of *July* following, filed a bill in chancery to compel a specific performance of the contract, and in *Decem-*

1841.

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

*ber* of the same year, a specific performance was decreed, and deeds were directed to be executed by the company, and by the heirs at law of the president. Deeds were accordingly executed, and the Messrs. Merritt on their part, executed a mortgage to secure the balance of the purchase money specified in the contract: previous, however, to the execution of which instruments, the Messrs. Merritt had *notice* of the *tender* of the money, and *demand* of a deed made by Edwards, on the 25th June. There was a motion for a nonsuit on the ground that the company had improperly been made parties; which was overruled by the circuit judge. The jury under the charge of the judge, found a verdict for the *plaintiff*. The defendants on a *bill of exceptions*, moved for a new trial, which was denied by the supreme court, and judgment rendered for the plaintiff. See the opinion delivered by Mr. *Justice* COWEN, and the facts of the case, more fully stated in 21 *Wendell* 467, *et seq.* The defendants sued out a writ of error. The case was argued in this court by:

*W. C. Noyes* and *G. Wood*, for the plaintiffs in error.

*W. Kent* and *C. O'Connor*, for the defendant in error.

*Points submitted and argued for the plaintiffs in error:*

I. There was no proof that the premises were in the possession of the defendants below, or that they were unoccupied at the time of the commencement of the suit, and the circuit judge erred in permitting the plaintiff below to show that the defendants claimed title to, or some interest in them at that time. 2 *R. S.* 304, §§ 4, 5, 6. *Runn. Ej't.* 166–7, &c. *Cooper* v. *Smith*, 9 *Serg. & R.* 26. 6 *Pick.* 172. *Cook* v. *Ryder*, 16 *Id.* 186.

II. The motion for a non-suit should have been granted, for the reasons given, when the motion for that purpose was made. 1. There was no evidence that the premises were in the possession of the defendants below at the time

the suit was brought; or that they were unoccupied; nor any that the defendants below claimed title thereto or any interest therein at the time of the commencement of the suit: on the contrary, the proof shewed a disclaimer of all such title and interest, as authorizes an action of ejectment against a person not in possession, with a positive declaration that these existed in other persons. 2. The plaintiff below showed title out of himself, by producing his mortgage to the defendants below, in connection with the evidence of tender, which admitted the non-payment of the amount due according to the condition and its remaining due for a long time, and the consequent perfecting or vesting of the conditional estate which it conveyed, in the defendants below. At the time of the tender the mortgage money had been due upwards of ten years—the conditional estate had become absolute, and an offer to pay the money could not divest the title. *Jackson* v. *Laughead*, 2 *Johns. R.* 75. *Same* v. *Green*, 4 *Id.* 186. *Same* v. *Chase*, 2 *Id.* 84. *Same* v. *Fuller*, 4 *Id.* 215. *Same* v. *Deyo*, 3 *Id.* 422. *Same* v. *Vanslyck*, 8 *Id.* 487. *Same* v. *Myers*, 11 *Wend.* 538, *per Ch. Just. Savage*. *Same* v. *Minckler*, 10 *Johns. R.* 480. *Morse* v. *Gallimore, Runn. Ej't*, 181; *Douglas*, 278.

III. The action should have been brought against the Merritts, who claimed, under the sale by the defendants below to them, who actually claimed title to, and exercised acts of ownership over the premises, and made improvements, and who were known to be such claimants and owners prior to the commencement of the suit. The plaintiff below had written notice of this claim and of the possession, with the fact that some sales had been made by them before action brought, and should have made such claimants parties instead of the defendants below, in order that the persons really interested might appear and defend their rights.

IV. The purchase of the premises by Tibbits as president of the company, in his own name upon the foreclo-

sure sale, was not a purchase by the defendants below, nor did the title vest in them on the delivery of the master's deed; if the purchase is to be regarded as with their consent, they acquired no legal right whatever except to compel him to pay the purchase money, 1 *R. S.* 728, § 51, 2. The legal estate for all purposes vested in Tibbits. Independently, therefore, of any other question in the case, and whether, if the master's deed had been directly to the company, a tender would have divested their title, it certainly could not have the effect to divest the legal title of Tibbits or his heirs, and revest it in the plaintiff below. There is no foundation in our law for this mode of transmitting the title to real estate. The plaintiff below, therefore, showed no legal title. *Jackson* v. *Sternberg,* 1 *Johns. Cas.* 153. *Jackson* v. *Morse,* 16 *Johns. R.* 197. *Edwards* v. *Farmers' Fire Ins. and Loan Co.* 2 *Ed. Ch. R.* 547.

V. The provision of the third section of the act incorporating the defendants below, *Statutes of* 1822, *p.* 47, § 3, do not render a forclosure and sale of the mortgaged property, a continuation of the mortgage, and give the mortgagor a right to redeem. *Dwarr. on Stat.* 695. *James* v. *Morey,* 2 *Cow. R.* 246. *Lansing* v. *Goelet,* 9 *Id.* 346, 401–2.

VI. The tender did not cause any legal title whatever in the premises to revert to the plaintiff below. Such is never the effect of a tender after the day of payment has elapsed and the conditional estate has become absolute in the mortgagee. There was no effectual tender: the money not having been brought into court. It is said the *tender* restored the estate to the mortgagor. If so, surely the money should have been brought into court. *Barnardiston's Rep.* 90. *Coke Lit.* 219, *b. Powell on Mort.* 4, 8. *Id.* 1009, 10. *Hill* v. *Payson,* 2 *P. Wms.* 278. 3 *Mass.* 559. *Nesterdell* v. *Dale,* 7 *Term. R.* 306. *Patchen* v. *Pearce,* 8 *Johns. R.* 96. 12 *Wend.* 61. *Merritts* v. *Lambert,* 7 *Paige,* 344. 5 *Cowen,* 248.

1841.

Farmers' Fire
In. & Loan Co.
v.
Edwards.

VII. The sale to and possession by the Merritts in good faith, and without any intention to make it a mere cover and cut off the right to redeem, with the payment by them of a substantial part of the purchase money was a compliance with the act of incorporation; the property no longer remained in the hands of the company unsold, and this put an end to the right to redeem if any such right previously existed. *Merritts* v. *Lambert*, 7 *Paige*, 344. *Dwarris on Stat.* 688, 702, 750. *Cruise Dig. tit.* 32, ch. 11, § 1. 2 *R. S.* 48, § 61; 110, § 61; 293, § 42, 43, 45. *Id.* 409, § 63–4–5. 1 *R. S.* 527, § 26. *Paine* v. *Miller*, 13 *Price*, 76, 104. 6 *Vesey*, jr. 349. *Per Chan. in error*, 16 *Wendell*, 396. *Prec. in Ch.* 320.

*Points submitted and argued on the part of the defendant in error:*

I. *Payment* by the mortgagor, after forfeiture at law, accepted by the mortgagees, would have entitled the mortgagor to recover in ejectment against the mortgagees, if, having possession of the mortgaged premises, they refused to surrender such possession to him; for by the modern law a satisfied mortgage is no bar to an ejectment by the mortgagor, brought either against the mortgagee or a stranger. *Martin* v. *Mowlin*, 2 *Burrows*, 969. *Peltz* v. *Clark*, 5 *Peters' U. S. R.* 481. *Anonymous*, 1 *Strange*, 413. *Richard* v. *Simms*, *Barnardiston's Ch. R.* 90. *King* v. *St. Michaels*, *Douglass*, 632. *King* v. *Inhabitants of Edington*, 1 *East.* 288. *Jackson* v. *Willard*, 4 *Johns.* 41. *Jackson* v. *Davis*, 18 *Johns.* 7. *Powell on Mortgages*, 170. *Jackson* v. *Crafts*, 18 *Johns.* 110. *Matthews* v. *Walweyn*, 4 *Vesey*, 128. *Wilson* v. *Troup*, 2 *Cow.* 195. *Jackson* v. *Myers*, 11 *Wend.* 537. 1 *R. S.* 721, § 45, 47. *Coote on Mortgages*, p. 9, 12, 13, 18, 19. *Coke Litt.* 206, a. *Eaton* v. *Jaques*, *Douglass*, 460.

II. The purchase by the company, under their own foreclosure, by virtue of the third section of the act of incorporation, extended the *law-day*, or time allowed to the

mortgagor to pay the debt and extinguish their lien, until an actual *sale* of the property by them to a stranger. *Laws of N. Y.* 1822, *p.* 47, 45 *Sess. ch.* 50, § 3.

*1841.*

*Farmers' Fire In. & Loan co. v. Edwards.*

III. The tender of the defendant in error having been refused by the company, was equivalent in its legal consequences, upon their lien, to an actual payment after the day. It entitled the mortgagor to maintain ejectment. 1. As long as the *common law* gives the mortgage debtor a right to pay, it holds, that a tender and refusal discharges the land. 2. When a *statute* gives a right precisely similar, or, more properly speaking, merely *extends* the day allowed for making the payment, the law, in order to be consistent with itself, must hold a tender and refusal at the statutory day to be as efficacious as a like tender and refusal at the common law day. 3. There is no conceivable mischief or inconvenience in allowing to a refused tender under the statute, the force of an actual payment, which does not exist, in an equal degree, under the common law rule as to tenders *before* forfeiture, inasmuch as it is the creditor's folly not to accept his due when tendered, because it would be incongruous to allow him to take advantage of his own wrongful refusal, and because the debtor's right is *given by the law*, the *law* gives, in both cases, the remedy for its establishment. 4. When the common law, or a statute, gives a right, which is, in its own nature, capable of being enforced by the simple and direct process of the common law courts, the perverseness of the other party cannot compel a resort to equity. Rights given by the *law* are cognizable *at law*. *Bacon's Abr. tit. Tender F. Littleton,* § 238. *Co. Litt.* 208. *Astor* v. *Hoyt,* 5 *Wend.* 615. 1 *Story's Equity,* § 32. *Edwards' Mitford on Pleading, old paging,* 3. 1 *R. S.* 409, § 66, 67, 73, 74, 76, 77. 1 *R. S.* 411, § 80. 1 *R. S.* 413, § 92, 86, 93, 95. *Laws of* 1816, *p.* 12, § 2. 2 *R. S.* 370, § 45. *Laws of* 1837, *p.* 455, § 1, *et seq. Coote on Mortgages,* 18.

IV. The effect of the tender was not impaired or varied by the master's sale having been made to Tibbits, instead of

**1841.**

*Farmers' Fire In. & Loan co.*
*v.*
*Edwards.*

being made directly to the company. 1. The deed to Tibbits, if intended to enable the company to conceal their interest in the land, and thus defeat the right of redemption, was a fraud upon the act of incorporation, and void as against the defendant in error. 2. The deed having been taken by Tibbits as trustee for the company, they were, all along, the real purchasers, and the title, if any, of Tibbits' heirs, was divested before the tender by the conveyance from his executors to the company. *Jackson* v. *Leggett,* 7 *Wend.* 379. *Walton* v. *Cronly's admr.* 14 *Wend.* 67. 1 *R. S.* 728, § 51, 52. *Jackson* v. *McCall,* 3 *Cow.* 81.

V. The covenant to convey to the Merritts, did not impair the rights of the defendant in error. 1. That covenant was not a *sale,* but merely an executory contract to sell. A *sale* operates upon the land itself; a covenant merely binds the person of the covenantor. 2. The purchase by the company, under their own foreclosure, left the right of redemption in full force until a *sale.* A power conferred by statute to destroy the title of another, must be strictly pursued and fully executed in order to effect such destruction. 3. The maxim of equity, that " what is agreed to be done, shall be considered as done," is not intended, even in equity, to be taken as literally true, but means only, that the covenantor or promissor shall not be benefited by his own neglect to fulfil his undertaking. The contract with the Merritts was not a sale within this maxim, or in any sense. *First*—The defendant in error was not a party to the covenant, and did not hold under the company. Being, therefore, neither a party nor a privy, he is not bound by the covenant. He needed but to *disencumber his old title,* not to acquire a new one. He owned the land, subject only to the condition as modified by the master's sale, and section three of the act of incorporation. The tender fulfilled that condition, and left him, *in* of his old title. *Lathrop* v. *Ferguson,* 22 *Wend.* 118. *Second*—The covenant vested no superior equity in the Merritts. They did not claim under the defendant in

error, but under the company, to whose rights the title of the defendant in error was paramount. It was prior in time, being coeval with the mortgage. It was superior in right, not only because it was *older*, but because it conferred upon the defendant in error the power of destroying, at any time, the title of the company. The defendant in error was owner, for every *beneficial purpose*. The company could claim it for no purpose but mere security. He had in it a *freehold of inheritance*. They held it as a mere person chattel; his right was that of *saving* the forfeiture of his estate by a just fulfilment of the conditions annexed to it; and inasmuch as the Merritts, with full knowledge of his pre-existing rights, merely became voluntary contractors to purchase, at a future day, such right of the defendant in error, were the parties contending in a court of chancery, would be in all respects superior to the claim of the Merritts. *Third*—The contract with the Merritts was not a sale, either within the strict requirements of the act of incorporation, or according to any legal or even equitable sense. If a contract to sell is a *sale*, chancery would not decree its execution; it is already executed. Even a court of chancery cannot pass the title by its decree, except where specially authorized by statute a *deed* is necessary. 4. Payment by the Merritts of part of the purchase money even if followed by possession, adds no strength to their claim; for it is still only an executory agreement, and not a *sale*. Their right in equity, as against the company, was as perfect before the payment as afterwards; and, therefore, the right of the defendant in error to redeem was not varied by the payment. 1 *R. S.* 409, § 63–4. 1 *R. S.* 413, § 96, 84, 85, 86. 2 *R. S.* 370, § 42. *Laws of* 1820, 167. 2 *R. S.* 105, § 28; 111, § 66, 74. 2 *R. S.* 111, § 65; *also,* 2 *R. S.* 195, § 183, 184. 2 *R. S.* 135, § 6, 8, 10. 2 *Story's Equity,* § 714, 742, 749, 750, 751, 769, 1319, 1494. 1 *Story's Equity,* § 266, 272. *Twining* v. *Morrice,* 2 *Brown's Ch. Cases,* 331. 1 *Story's Equity,* § 95, 96. *Townsend* v. *Stangroom,* 6 *Vesey,* 338.

1841.

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

*Mortlock* v. *Buller*, 10 *Vesey*, 304.   *Walker* v. *Denne*, 2 *Vesey, jr.* 185.   *Craig* v. *Leslie*, 3 *Wheaton*, 563.   *Coote* on *Mortgages*, 13.   *Chamberlain* v. *Chamberlain*, 2 *Freeman*, 304.   *Mellor* v. *Lees*, 2 *Atkyns*, 495.   *Middleton* v. *Middleton*, 1 *Jac. and Walker*, 98–9.   2 *Story's Equity*, § 792.   *Covell* v. *Tradesmen's Bank*, 1 *Paige*, 135.

VI. The contracts with the Merritts was not binding on the company, because not executed by Isaac Merritt.   1. The agreement of the company to sell, was founded upon, and had for its only consideration, the supposed *covenant* of both William T. Merritt and Isaac Merritt.   2. William T. Merritt not having had authority to affix the seal of Isaac Merritt, there was a failure of the consideration on which the company made its covenant; which failure discharged the company.   2 *R. S.* 406, § 77.   *Fisher* v. *N. Y. Com. Pleas*, 18 *Wend.* 610.   *Case* v. *Boughton*, 11 *Wend.* 106.   14 *Wend.* 199.   *Also*, 15 *Wend.* 199, 359.   *Combe's case*, 9 *Coke R.* 76.   *Moor*, 70.   *Ld. Ray.* 1418.   *Strange*, 705.   3d *Am. Jurist*, 82 *to* 86.   *Stone* v. *Wood*, 7 *Cow.* 453.   2 *Vern.* 280.   5 *East.* 149.   *Spencer* v. *Field*, 10 *Wend.* 89.   9 *Johns. R.* 73.   *White* v. *Cuyler*, 6 *T. R.* 76.   1 *Harris & Johns.* 706, 710.   5 *Peters' U. S. R.* 351.   7 *Mass. R.* 19.   16 *Mass. R.* 47.   4 *New-Hampshire Rep.* 103.   5 *Monroe*, 569.   *Stinchfield* v. *Little*, 1 *Greenfield*, 234.   *Bogart* v. *De Bussy*, 6 *Johns. R.* 94.   3. A subsequent parol assent by Isaac Merritt would not obviate this objection.   4. The cases arising under the statute of frauds, in which it has been held, that that statute was satisfied if the defendant, the party to be charged, had signed the contract, do not affect this question.   A contract, in order to be binding, must be good at common law; and, if of the class of contracts mentioned in the statute of frauds, must also be *proved* according to that statute; but, having all the *evidence* which the statute requires, will not remove a defect in the contract itself, which renders it void by the common law.

After advisement, the following opinions were delivered:

1841.

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

*By the* CHANCELLOR. Having examined the principal questions in this case, when sitting in another court, and written an opinion which is already in possession of the members of this court, and the argument here not having thrown any new light upon those questions, I have not considered it necessary to go over the same ground the second time. It now remains for the other members of this court to decide whether the Vice-Chancellor and Mr. Justice Bronson and myself, on the one side, or the two other justices of the supreme court and the assistant vice-chancellor on the other, have taken the correct view of the important legal questions involved in this case.\* But in a case where a considerable amount of property is involved in the particular suit, and where one of the questions upon which the affirmance or reversal of this judgment rests, is of so much consequence to all holders of mortgage securities, I am not at liberty to withhold my vote, although I have before passed upon the same questions in another form.

I shall therefore vote for a reversal of the judgment of the court below, upon two grounds: either of which would be sufficient to render that judgment erroneous: *First.* That a valid and binding written contract to sell the premises, after they had been bid in by the mortgagees, or for their benefit by the president of the company, which agree-

---

\* The opinion alluded to by the CHANCELLOR may be seen in 7 *Paige* 344, *et seq.* The Messrs. Merritt filed a bill in chancery against the corporation, to compel a specific performance of the contract of March, 1835, and in the suit thus commenced, the VICE-CHANCELLOR made an order directing the appointment of a receiver of the premises in controversy, thus sustaining the bill. See the opinion of the Vice-Chancellor, in 2 *Edwards' Ch. R.* 547. From this order an appeal was taken to the Chancellor, upon which occasion the opinion above alluded to, was delivered by him. The cause was subsequently heard on pleadings and proofs before the ASSISTANT VICE-CHANCELLOR of the first district, who dismissed the bill on the ground that a naked *agreement to sell* cannot be deemed a *sale* within the scope of the act of incorporation of the company. Mr. *Justice* BRONSON in the supreme court, *dissented* from the opinion there delivered.

ment for a sale the court of chancery would have enforced against the vendors, is a *sale* of the premises within the intent and meaning of the statute chartering this company. After that contract had been made, and part of the purchase money had been received, the lands no longer remained in the hands of the corporation *unsold*, so as to authorize the mortgagee to redeem; and *Secondly*. That the tender of the mortgage money after there has been a default of the payment of it at the day, cannot have the legal effect of depriving the mortgagee of his security, if, for any cause, he does not think proper then to receive the amount so tendered. But that, like a tender in other cases, it merely deprives him of the right to interest and costs afterwards, until there has been a subsequent demand of the money and refusal of payment, if it turns out that the amount tendered was all that was rightfully due, and that the mortgagee ought to have received the money when it was so offered to him. A decision which will compel the holder of a mortgage, at his peril, to be able at all times to decide at once what was due thereon, under the penalty of losing his security upon the land if he made a mistake and did not receive the money when it was offered, is not only contrary to the settled rule of the common law, but is inconsistent with the principles of justice and equity. So it would be equally unjust to deprive a mortgagee of his security, without actual payment of his debt, in case he should by mistake suppose the right of the owner of the equity of redemption had been legally foreclosed, and should for that reason refuse to receive the money when it was tendered to him. On the other hand, no injustice would be done to the owner of the equity of redemption, by holding the mortgage to be still a valid lien upon the land, notwithstanding the tender and refusal of the money; for, if the mortgagee should, without a sufficient cause, refuse to receive his money and discharge the land from the lien of the mortgage, the court of chancery would compel him to pay the costs of a bill to redeem,

when the mortgagee was in possession so as to render the filing of such a bill necessary.

1841.

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

By *Senator* VERPLANCK.   The learning of this important case has been so completely exhausted by Judge Cowen, (with all whose conclusions I fully concur,) that any detailed examination of authorities has seemed to me to be superfluous.   Indeed, had I not found during the argument that a different view of the case was taken by a distinguished law member of this court, I should have been contented to have voted upon the opinion of the majority of the supreme court, without assigning any farther reasons; nor shall I now attempt anything more than a general outline of the course of thought and reasoning which has led me to support that decision.

The first question, in the order of consideration in which the case presents itself to my mind, is this: Granting the mortgaged land to have been held by the company in such wise that according to the peculiar provisions of its charter the original mortgagor has " the right of redemption " of such property, does the unaccepted tender of the debt, after forfeiture, discharge the lien upon the land, so as to cause the legal title to revert to the mortgagor, and thus enable him to maintain his action of ejectment ?

The ancient common law doctrine is undoubtedly stated with precision by the Chancellor, in the case of *Merritt* v. *Lambert*, 7 *Paige* 344, which grew out of the same transaction, and involves the same legal points with the suit now before us.   " The correct principle as intended to be laid down by *Littleton* and *Coke*, is that if there is a tender of the mortgage money, at the time and in the manner prescribed in the condition of the mortgage, and the mortgagee refuses to receive it, the condition is complied with, and the estate reverts back to the mortgagor by the express terms of the instrument.   So that if the mortgagee is so unwise as to refuse his money when it is tendered at the time and place and in the manner prescribed in the in-

VOL. XXVI.                    70   .

strument, he necessarily must lose his security upon the land which was merely collateral to the debt, although the mortgagor may be still liable for the money where there is an existing indebtedness. But if the money is not paid by the day, the condition on which the land was to revert to the mortgagor has not been complied with; and the interest of the mortgagor in the land is then reduced to a mere equity of redemption, and an actual payment not a mere tender, then becomes necessary to discharge the legal and equitable lien of the mortgagee upon the land." But the rule, as here laid down, sprang directly from, and depended upon the strict common law view of the nature of a mortgage, as being the creation of a determinable fee with a right of reverter, the estate becoming absolute in the mortgagee upon forfeiture of the condition of payment. Thence it consistently and necessarily followed that the actual payment and receipt of the debt after the law day, was not sufficient to re-vest the legal title in the mortgagor, but that a re-conveyance was necessary. In modern days, and more especially in this state, a series of decisions, together with judicial reasonings and opinions in less authoritative forms, founded upon, following out, and gradually enlarging the equity doctrine of mortgage, as held by *Hardwicke* and adopted by *Mansfield*, has led finally to a very different practical view of the nature of freehold mortgages, their incidents and effects. They have been considered, both in law and equity, as mere securities for money, wherein the mortgagee's interest is a mere chattel, as instruments pledging land to secure debt, whilst the property remains for all other purposes in the mortgagor until actual foreclosure. Lord *Hardwicke* pronounced " the land to be the incident attending upon the debt," and that " when the debt is discharged the land followed of course." *Richards* v. *Syms*, 3 *Eq. C.* 617. *Mansfield* had followed, by holding " the mortgagee's estate in the land to be the same thing with the money due upon it." 2 *Burr.* 968. These principles have been re-

ceived and followed out to their consequences more fully in this state than elsewhere.  Mortgages have been judicially pronounced not to be conveyances, and to leave the freehold in the mortgagor.  The mortgagee's interest has been classed as a chattel interest merely, and it has long been regarded as settled, that an accepted payment of the debt saves the estate, and bars an action of ejectment without any deed of re-conveyance.  See the several authorities collected by Judge Cowen, in his opinion delivered in this case, and also the history of our New-York law of mortgages, as succinctly stated by the late chief justice of Connecticut in *Clarke* v. *Beach,* 6 *Conn. R.* 144.  In Massachusetts and elsewhere, a different view of this subject has been taken, and the original, strict, real property rule of the common law has been retained more closely; whilst in other states, and in England, (though no where so rapidly and perfectly as in this state,) the doctrine of mortgages on land has exhibited that continual progression and amalgamation of law and equity which Lord *Redesdale* has acutely noted as a striking characteristic of our legal history, and which, I believe, may be traced in some shape or other, in every system of cultivated and scientific jurisprudence.  " Law and equity are in constant progression, and the former is continually gaining ground on the latter.  A great part of what is now strict law, was formerly considered as equity, and the equitable decisions of this age will unavoidably be ranked under the strict law of the next."  When the debt thus became, in the eye of the law, the principal, and the landed security merely appurtenant and secondary, the rights and interests of the parties must naturally be governed by those legal rules that form the law of the principal, except when the accessory security is directly resorted to.  Acceptance of payment at any time before foreclosure, was therefore held to discharge the incumbrance upon land, just as it would upon goods.  Then the next step of the application of the law of tender in personal contracts, followed of necessity.  The analogy

and authority of these decisions would apply to mortgages after they become due and until actual foreclosure, the rule of tender and refusal held in other cases. That rule is broadly laid down: "Tender and performance are equivalent to performance." 10 *Wendell* 374. This, however, is not to be taken literally in the full extent of those words, but means that such rejected tender, at or after the stipulated time of payment or performance, is equivalent to performance, so far as to discharge the party thus making tender, from all the contingent, consequential, or accessory responsibilities and incidents of his contract, but without releasing his prior debt or debts. *Coit* v. *Houston*, 3 *Johns. Cas*. 243. Thus the tender of money and refusal, will excuse interest and costs, but leave the prior debt. Tender of performance discharges damages; that of rent due discharges the legal lien of distress upon goods on the premises. 12 *Johns. R.* 274. 6 *Wendell* 22. 10 *Id*. 374. 6 *Cowen* 720. A still closer analogy to the present question is presented by the law of tender, as to the lien on goods pledged. "Upon tender of the money for which the articles were pawned," says Chief Justice Holt, in the justly celebrated leading case on the law of bailment, *Coggs* v. *Barnard*, 2 *Lord Raymond's R.* 916, "the pawnee by detaining them after the tender is a wrong doer, and it is a wrongful detainer of the goods, *and the special property is determined*." So also, Comyn: "By tender of the money the property in the goods is determined, and the pledge ought to be returned. But if the pawnee refuse to restore the pledge upon tender, trover lies against him." *Comyn's Dig., tit. Mortgage A, and authorities there cited.*

Thus it seems to me, that irrespectively of any former decision upon this very point we are led by the spirit and analogy of our own somewhat peculiar law of mortgages to the conclusion now maintained by the supreme court: that "the mortgagor's tender of his debt produced the same result after the law-day, as before it, and discharged the incumbrance on the land without discharging the debt."

This is not a necessary conclusion, since it does not in-
volve any fundamental principle of justice or law, and is
derived from positive and arbitrary rules, so that courts
in other states, as Virginia and Massachusetts, where the
current of authorities has flowed in a different direction,
might well hold an opposite rule; but it is in harmony
with our own state decisions, and with those leading au-
thorities which our decisions have followed. Besides all
this, we have the decision of our supreme court in the case
of *Jackson* v. *Crafts*, 18 *Johns. R.* 115, in which the rule
of Lord Coke, that " if the mortgagor tender the money to
the mortgagee and he refuseth, the land is freed for ever
from the condition, but yet the debt remaineth," was adopt-
ed as applying not only to a tender at the law-day, but to
any subsequent time until actual foreclosure. That deci-
sion has remained uncontradicted for twenty-one years. It
has (as we learn from Judge Cowen) been recognized as
law in our court, as in *Astor* v. *Hoyt*, 5 *Wend.* 615, and in
*Titus* v. *Myers*, 11 *Id.* 538, and probably in other cases
where it may have influenced the opinion of the court,
though it did not directly govern the decision. It is true, as
indicated by the chancellor, that the decision itself was
originally supported by the judge who delivered the opi-
nion of the court, by an inaccurate application of the rule
of *Littleton* and *Coke*, and by the erroneous statement of
that rule in the ordinarily faithful and laborious compila-
tion of Bacon. *Bacon's Abr. Tender A. Litt.* 338. *Coke
Litt.* 206, *a*, 209, *b*. Yet this erroneous statement or ap-
plication of authorities does not, of course, overthrow the
authority of the case itself, if it be otherwise in congruity
with the doctrine generally held by the court on this head
of law. Those more general views of the principle and
policy of the law must have governed to some extent the
opinions of the other judges, and of Judge Woodworth
himself, independently of the authorities cited. The deci-
sion itself appears to have been but another step in the
gradual departure of our mortgage law from that of the

ancient learning. The length of time during which it has stood uncontradicted, relating as it does to a matter arising out of ordinary and frequent transactions, adds no small weight of authority to the case, such as we are hardly warrantable in rejecting, unless it clashed with some great principle of justice or settled legal policy, and not merely (as it does) with the ancient authorities. In a former decision in this court, *Pell* v. *Lovett,* 22 *Wend.* 377, whilst maintaining the right and duty of a court of last resort, to disregard old and uncontradicted authority where a reversal was required by the substantial interests of justice, and the avowed policy of our statute law, whilst the point itself was one falling within the judicial discretion of courts, and unconnected with other rules of decision, or the ordinary transactions of business—I still felt it incumbent upon me to protest against the authority of such a reversal being thereafter used for the arbitrary exercise of appellate power. It was there said, that the principle then applied would not warrant us in disregarding former decisions of other courts, " where they go to establish any rule of property or to regulate personal rights, though they should be judged to be founded on arbitrary or artificial reasons. Such decisions enter largely into the concerns of men. They become interwoven with the whole body of the law and are silently recognized in the management of affairs by citizens of all classes, as well as by lawyers and courts— not so with a pure question of pleading," &c. The case of *Jackson* v. *Crafts* strikes me as being of this character. It is interwoven with our legal and equitable system of mortgages. It has been recognized during a whole generation in the management of business, and by lawyers and judges. If we now retrace our steps here, in obedience to the authority of *Littleton* and *Coke,* we may, for precisely the same reason, be called upon to do the same in reference to the effect of accepted payment upon the discharge of the incumbrance without deed of reconveyance or the aid of a bill of redemption, and thus to overthrow a rule be-

come familiar by frequent application for years, and upon which immense amounts of property may depend. The same doubt would arise as to the doctrine of *Runyan* v. *Mersereau*, 11 *Johns. R.* 534. *Jackson ex dem. Norton* v. *Willard*, 4 *Id.* 41, and similar cases in our reports, which are now regarded as settled law.

If, then, the rule of our supreme court on the effect of tender *after* the *law-day* remains undisturbed, that right of the mortgagor in the present case is still further extended by the act of incorporation of the mortgagees, "so long as the lands remain in their hands unsold." Was the land then remaining in their hands, or had they become purchasers of it, when on a foreclosure sale it had been bought in by the president of the company for their use and benefit and with their funds, but in his own name as grantee of the deed ? What was the legal effect of such a purchase ? The president took the conveyance in his own name either with or without the knowledge and consent of the company for whom he acted. In the absence of any evidence to the contrary, the taking the deed in his own name may be presumed to have been done erroneously and without their knowledge. In that case, by 2 *R. S.* 722, § 53, the provisions of the statute inhibiting any resulting trust in a grant to one person upon consideration paid by another, and vesting the estate absolutely in the grantee named in the deed, does not apply, and Tibbits held in trust for the benefit of the corporation, as his intent actually was. Thus the company, through him, "became purchasers of real estate upon which they had made loans." On the other hand, if he took the deed with the same intent and with the actual or implied knowledge and consent of the company, what was that but an evasion of the limitation imposed in their charter and in derogation of the rights of the mortgagor ? If so, it falls within the express provision of 2 *R. S.* 137, § 1. "Every conveyance or assignment of any estate or interest in lands or in goods, or things in action, made with the intent to hinder, delay, or

1841.

Farmers' Fire In. & Loan co.
*v.*
Edwards.

defraud creditors or other persons of their lawful suits, damages, forfeitures, debts or demands, shall be void." The mortgagor, here, if not in strict legal language a creditor, is not only within the equitable intent of that term, but literally within the words, " other person " who has a legal right of " demand " of redemption of his legal estate and of " a lawful suit " to enforce it. In either view the right of redemption still remains. The fair legal presumption, as the case appears in evidence, is the other way, that as the directors of this corporation intended that the land should be bought in by their agent, for their benefit and on their account, to prevent a sacrifice of their interests, it is to be presumed that they also intended that the conveyance should be so made as neither to hazard their own rights, or to avoid or delay the just claims of the mortgagor. The company having then, become the purchasers of the land " on which they had made a loan," did it continue to " remain in their hands unsold " after it had been contracted to be sold, and a part of the price had been received ?

There is a marked distinction, both in the familiar language of business and in that of the courts and statute-book between a *contract for a sale of land* and an *actual sale*—between an executory and personal contract, and one acting upon the thing itself—between the perfected contract of sale, and the *contract for a sale* hereafter. The distinction between lands sold, and lands under contract, is so familiar in common use, that were the strict and technical usage of the words contradictory or uncertain, there would be strong reasons for holding that the more familiar understanding should prevail, in an act expressly directed " to be construed in all courts benignly and favorably to effect the ends and purposes intended;" and when one of those main ends in the section under examination is clearly the protection and relief of the mortgagor, against hasty and rigorous sales of his property, by extending to him his legal period of redemption. But our statute-book gives us its own use and interpretation of such language in these

provisions, which both before and since the revision regulated and gave effect to agreements such as that now claimed to be a sale.   In requiring that they should be in writing, they are called " contracts *for the sale* of land."   Judicial use and decision mark the same distinction, as in the case of *Bull* v. *Price*, 5 *Moore & Payne*, 2, pointed out by Judge Cowen, where the non-suit was granted and sustained, because a negotiated and stipulated sale, requiring future conveyances, was held by Chief Justice *Tindal* not to be " a *sale*," which he defined to be a sale consummated and conveyance executed.   Thus, also, when prior interests in lands come into collision with the legal title acquired by a subsequent fair purchase, the party claiming under the executory, or partly executed but unperfected contract, is subject to have that interest defeated, and to be compelled to look to the personal responsibility of him with whom he contracted, unless so far as he entitles himself to relief by actual notice, or what is equivalent to it in effect, so as to prove or to raise a presumption that the legal purchase was not in good faith, and therefore as against him, was void.   The contract for land is an equitable right, which, as such, gives way to a subsequent sale, when that legal right has also equal equity.   Relief is given not because the contract and the sale are the same in the eye of equity, and the prior has the stronger right, but because the latter, after notice, to use Chancellor Kent's phrase, " is held to be in fraud of the equitable incumbrance."   1 *Johns. Ch. R.* 298.   Thus here, the contract to sell gave the Merritts an equitable interest and rights as against the company, but the land remaining unsold those rights cannot exclude the prior right of Edwards to reinvest himself in good faith with his legal estate as secured by the act of incorporation.

It also appears to me that the judge was not correct in refusing the non-suit in the state of the evidence at the time when the motion was made, because the plaintiff had not shewn that the lands were unoccupied; since, accord-

**1841.**

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

**1841.**

Farmers' Fire
In. & Loan co.
*v.*
Edwards.

ing to our statute, a suit in ejectment can only be brought against the actual occupant when there is one, 2 *R. S.* 230, and it is only when the land is not occupied that " persons claiming title or some interest therein " can be made defendants; but the after evidence supplied this deficiency by Ford's testimony, that " the lands had continued from his earliest recollection as part of the public common; that no part had been entered at any time, or any portion of them in any way occupied or improved by any one." The acts of ownership by the Merritts, if such they were, might also, perhaps, have made them proper defendants, as " claiming some interest in the land," but did not make them *actual occupants,* so as to render them the only proper parties against whom ejectment could be brought for the land. An incidental error of this sort, which would not have been such upon the whole testimony as afterwards presented, has no bearing on the merits of the cause, and should not now be regarded. The judgment should be affirmed.

On the question being put, *shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* The CHANCELLOR, and *Senators* DIXON, HOPKINS, HUNTER, H. A. LIVINGSTON, NICHOLAS, PECK, and PLATT—8.

*In the negative:* The PRESIDENT of the Senate, and *Senators* DENNISTON, ELY, FURMAN, HULL, HUMPHREY, HUNT, JOHNSON, SCOTT, VERPLANCK, and WORKS—11.

Whereupon the judgment of the supreme court was *affirmed.*