DANIEL McLAREN v. THE HARTFORD FIRE INSURANCE CO.

After a master's sale on a foreclosure of mortgage of the insured premises, and before confirmation of the report of sale, the buildings were destroyed by fire. *Held*, that this did not destroy the interest of the assured, nor did it work such a transfer or change of title as would, under the conditions of insurance, render the policy void.

THIS was an action of assumpsit on a policy of insurance against fire, tried at the New York Circuit, June 11, 1845.

The plaintiff was the owner of the Pavilion hotel at Saratoga Springs. R. H. Cummings held two mortgages on the premises, given by the plaintiff, one for $12,000, and the other for $6,000, which were reduced by payments to $14,253.05. Still farther to secure this debt, this policy of insurance was effected and assigned to Cummings.

In 1843 Cummings foreclosed his mortgages, and on the 6th of September of that year the premises were sold on that fore-

closure. One of the conditions of the sale was, that $10,000 of the purchase-money might remain on bond and mortgage, that $500 should be paid at the time of the sale, and the residue when the decree should be enrolled and the deed be ready for delivery. A. Quackenbush became the purchaser for $15,000, and paid the $500 to the master and signed a memorandum of the sale. The decree was not enrolled till 6th November, when the deed was delivered and the sale completed, by Quackenbush giving his mortgage on the premises for $14,000, and paying the balance of his bid in cash.

The avails of that sale, and other moneys received by Cummings, paid off his mortgages in full, and on the 6th of November, 1843, he delivered to the master his acknowledgment that on that day he had received from the mortgageor $290.31, the deficit on the amount reported due to him, and which satisfied the full amount, both principal and interest, so reported due to him.

On the 11th of October, 1843, the buildings insured were entirely destroyed by fire, and this action brought for the benefit of Cummings, the assignee of the policy.

A verdict was taken for the plaintiff for $5,466, subject to the opinion of the court on a case to be made.

The case now came on for argument.

*J. W. Gerard* for plaintiff.

1. If the assured premises means the land, and Cummings is to be regarded as the assured, and if a sale by the law is a sale by Cummings, still there was no transfer of the title before the fire. There was an inchoate bargain or contract for the sale, not consummated, and no deed made (nor could be) until the 6th of November, nearly a month after the fire, and not until then was the title transferred. Neither had the purchaser, Quackenbush, possession, nor could he have, by the decree, until the master's report of sale was filed, which was not until the 25th day of January, 1845. (*Edwards* v. *Farmers' Loan Co.*, 26 Wend. 541, 566.)

In this State there is no transfer of title until the deed is·

actually delivered.   In England, not even then; not until the confirmation of the master's report of sale.   As between vendor and vendee, to do equity (not as between assurer and assured to work a forfeiture) a court of equity will sometimes give the deed relation back to the time of sale, as in emblements, etc.

Conditions which work a forfeiture, are to be construed strictly. (Hoffman's Practice of the Master's Office, 220 to 222; *Cotheall* v. *Jefferson Ins. Co.*, 7 Wend. 72; 4 Hill, 171.)

But McLaren was the assured, and *he* sold nothing.

2. Judicial sales, by act of the law, are never considered as sales by a party.   This was a hostile foreclosure against McLaren, and could have no effect upon his policy until an absolute transfer of title by deed to pass the legal estate.   In the declaration McLaren counts on his own interest as owner, and on Cummings' interest as mortgagee and assignee, and on the preliminary proofs. (1 Phillips on Insurance.)

3. Cummings claims in a double aspect—first, as a mere naked assignee representing McLaren's interest; second, as an assignee coupled with an interest.

He had *two* mortgages, on which $14,000 was due.   His insurable interest in the property was not to *cease* by the sale, but by the terms of the sale he was to take from the purchaser a mortgage of $10,000; therefore his insurable interest was not to cease a moment, but his interest as mortgagee on the lot was to continue the same as before the sale.

*D. Lord, contra.*

1. By sale of 6th September, 1843, under the decree in foreclosure suit, the title of McLaren in the property insured passed to Quackenbush, the purchaser at such sale, and the insurance to McLaren thereby became void and ceased; and if void as to McLaren, it was equally so as to Cummings his assignee. (*Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 399; *Columbia Ins. Co.* v. *Lawrence*, 10 Peters, 509; *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 Peters, 495.)

2. At the time of the fire, McLaren had no insurable inter-

est whatever in the property, same having been foreclosed by Cummings. The purchaser, Quackenbush, never insured with defendants, and the loss by fire was his loss, and not the loss of McLaren nor of Cummings. (*Strong* v. *Manuf. Ins. Co.*, 10 Pick. 40; *Brown* v. *Frost*, 10 Paige, 243.)

3. The change of interest, so far as the risk of the property went, was complete when the contract of sale under the mortgage decree was made. (Sugden's Law of Vendors, ch. 5, § 2, p. 277 to 337; Powell on Contracts, 2, 61; *Paine* v. *Miller*, 6 Ves., Jr. 349; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 399; *Columbia Ins. Co.* v. *Lawrence*, 10 Peters, 507, and cases there cited; *Carpenter* v. *Prov. Wash. Ins. Co.*, 16 Peters, 495, and cases there cited.)

4. The sale to Quackenbush, and the taking of a new mortgage from him by Cummings for the price of the sale, paid the McLaren mortgage held by him in full, and he therefore had no right of action against the defendants, having sustained no damage by the fire; the insurer of McLaren and Cummings being entitled to these securities by way of a subrogation to the rights of their insured. (2 Phil. on Ins. 282; *Ætna Fire Ins. Co.* v. *Tyler*, 16 Wend. 399, and cases there cited; 5 Paige, 285; *Mayor* v. *Pentz*, 26 Wend. 671.)

*The Circuit Judge:* The contract of insurance is emphatically one of indemnity. It is not the *thing* that is insured, but the person in regard to the thing, and he is to be indemnified against loss.

Hence it becomes a pertinent and material inquiry on the trial of insurance cases, what interest had the claimant in the thing destroyed, and has he been damnified by the destruction.

The policy in this case having been assigned to Cummings, it has been insisted for the defendants that the only inquiry was, what interest he had at the time of the trial; and it is claimed that, as his whole debt has been paid, independent of the insurance, he has not been damnified. As mortgagee he had an insurable interest, and if he had insured as mortgagee this consideration must have barred his recovery. But it was

not him, it was McLaren who was insured, and the moment his debt was paid, the policy which had been assigned to him to secure that debt reverted back and belonged to McLaren; so that the proper inquiry is, not what interest had Cummings, but what interest had McLaren, in the assured premises, and that depends upon the question how far his title was divested by the sale which took place before the fire, but was not completed by the delivery of the deed until afterward.

This question involves two considerations:

1. Upon general principles governing the contract of insurance, requiring that the assured, at the time of the loss, shall have an interest in the property insured.

2. Upon the terms of the contract, viz., the seventh clause of the conditions, which declares that the insurance shall be void and cease in case of any transfer or change of title.

An insurable interest does not mean merely the legal title, but the having an interest which can gain or lose by the fire —the having a property in the subject insured, so that he can sustain loss and be entitled to indemnification. The object of the contract is not to replace the thing destroyed, irrespective of its owner or possessor, but to indemnify and save harmless the person in respect to loss from the destruction of the property. (*Lynch* v. *Dalzell*, 3 Bro. P. C. 497; 2 Marsh, 787; *Sadler's Co.* v. *Babcock*, 2 Atk. 554; Parke, 502.)

As has already been suggested, this was not an insurance of Cummings, the mortgagee. If it had been, he would have been the absolute owner, and the policy would have ceased the instant his debt was paid, and simply because from that moment he could sustain no loss. But it was the insurance of the mortgageor; and by the assignment to Cummings there were two owners, or, in other words, two persons interested in the insurance — Cummings first, to the amount of his debt, and McLaren afterward, in whatever the insurance or loss should exceed that debt, or whenever the debt should be paid, then to the whole amount of the loss. In the language of *Carpenter* v. *Prov. Wash. Ins. Co.* (16 Peters, 507), the policy was designed by the parties to be on account of the owners,

and for their benefit, and it was only collateral security to the mortgagee to the extent of any interest he might have therein in case of fire. In this view, it operated as a security to the owners against the entire loss.

If Cummings' debt had been less than the amount insured and the amount of loss, there would have been two persons in the first instance who had a claim to be indemnified — the mortgagee to the amount of his debt, and the mortgageor for the excess. But as his claim was always larger than the amount insured, the claim of the mortgageor was not to any such excess, but to the amount when the debt should be paid.

Hence the question, whether Cummings had an insurable interest at the time of the loss, depends upon this, whether his debt was paid by the sale under the foreclosure, which took place before the fire, though not completed till afterward; and whether McLaren had an insurable interest depends on this, whether that sale, thus incomplete at the time of the loss, though perfected afterward, worked a change or transfer of title.

As to Cummings, two things are to be remarked:

1. That the amount of the sale was not enough to discharge his whole debt; there was still a balance left, which was afterward paid by the mortgageor: *pro tanto* then, this deficiency, he had a continuing insurable interest.

2. That although the sale to Quackenbush was so far perfected that a specific performance could be enforced (notwithstanding the deterioration in value by the fire, *Revell* v. *Hussey*, 2 Ball & Beatty, 287; *Poole* v. *Shergold*, 2 Br. Ch. R. 118), and was, in fact, afterward completed; yet at the time of the loss only $500 had been paid toward the purchase, and there was, at that time, a much larger amount due on the mortgage than the amount insured.

The doctrine of equitable conversion, to which I am referred, does not prevail at law. If it did, and to the extent claimed, it would involve this absurdity, that although Quackenbush might never perform his contract of sale, and although Cummings might not, from that sale, ever realize more than

the $500 on his mortgage, yet the sale is to be regarded as completed, so as to destroy Cummings' insurable interest, and so that Cummings should not be able to get his money on the sale because it fell through, nor on the insurance, because the sale is to be regarded as complete. This would be giving an effect to a fiction in equity, which would hardly commend its introduction into legal proceedings. At law, we are to regard things as they are, and not as they are to be; and the fact is, in this case, that at the time of the loss, Cummings had a subsisting claim on his mortgage still unpaid, to an amount exceeding that covered by this policy, and this suit being brought for his benefit, he has a right to recover, unless that sale caused a change or transfer of title, and brought the case within the seventh clause of the conditions, and worked a forfeiture of the policy.

The contract of insurance is eminently a personal one, not merely because it aims at indemnifying the person insured, but because it involves, in an unusual degree, personal confidence. During the duration of the risk, the subject-matter of the insurance is under the control, not of those who assume the risk, but of those for whose benefit it is assumed; and it is therefore not only the duty of courts to maintain this confidence, but it is a right of the insurers strictly to be guarded, to choose in whom they will place their confidence. It is therefore that the clause under consideration becomes material. But for this, it would be of no consequence who owned the property covered by the policy, and by this clause the insurers have protected themselves in the enjoyment of this right.

Like many other accustomed clauses in the contract of insurance, it is not so carefully worded as to leave no room for cavil. Strictly construed, it would be confined to a change or transfer of legal title, however controlling might be the equitable interests, or however absolute the possession of others; and I am not certain that such minute strictness ought not to be insisted upon here, because whatever works a forfeiture is always to be strictly construed.

Taking, however, the intention of the parties as the true

criterion of construction, and bearing in mind that this clause was inserted for the purpose of enabling the insurers to exercise the right of determining in whom they will repose confidence, and that they have already exercised it so far as to put their confidence in the assured, the true test will be, whether any act has been done, that is, any act changing or transferring the title, which has changed the object of this confidence, and compelled the insurers, without their consent, to repose their trust in any person whom they have not selected. Such would have been the effect if McLaren had executed a voluntary conveyance to Quackenbush. But can that be regarded as the effect of an inchoate compulsory sale, like that which occurred before the loss in this case? There had as yet been no change or transfer of the title; some steps toward such a change had been taken, but the change was not yet complete. One of those steps had been the execution of the mortgage; another had been the foreclosure and sale under it; but other steps were yet necessary, to wit: the enrollment of the decree, the payment of the consideration, and the execution and delivery of the master's deed. Suppose those steps had never been taken—that the purchaser had been unable to pay the consideration, or that the court had set aside the sale and ordered a resale, or that any other of the numerous causes which operate to prevent the completion of such a contract of sale had occurred—upon what principle could it be held that there was a transfer of title? Transfer from whom? Not from McLaren, because in any of these events the title would be just as much in him, and he just as much the owner as he ever was. Transfer to whom? Not to Quackenbush, for in some of these events he might never take the title, but it might finally vest in some other person.

Upon no other principle can this sale be regarded as transferring the title than that of equitable conversion, which, as I have already said, does not prevail at law.

I am confirmed in this view of the case by the language of the Court of Errors, in *Farmer's Loan Co.* v. *Edwards* (26 Wend. 560). Senator Verplanck, who delivered the prevailing

28—vol. 1.

opinion, says, with great force and propriety, "There is a marked distinction, both in the familiar language of business and in that of the courts and statute book, between a contract for a sale of land and an actual sale—between an executory and personal contract and one acting upon the thing itself—between the perfected contract of sale and the contract for a sale hereafter." And he refers to our statute wherein "contracts for the sale of land" are words used as distinguished from a "sale of land," and to the decision of TINDAL, C. J., in *Bull* v. *Price* (5 Moore & Payne, 2), that a negotiated and stipulated sale, requiring future conveyances, is not a sale, which he defines to be a sale consummated and conveyance executed.

In *Bell* v. *Fireman's Ins. Co. of New Orleans* (3 Robinson's La. R. 426), the plaintiff had contracted to sell his boat, but had not delivered possession, nor received the price, and it was held that he had an insurable interest.

This being the rule in voluntary contracts for a sale of land, it seems to be even stronger in the cases of compulsory sale. The bidder is not considered the purchaser until the report is confirmed, and therefore he is not liable to any loss by fire, or otherwise, which may happen to the estate in the interim, nor is he, until the confirmation of the report, compellable to complete his purchase. And it has been held, that where a loss by fire happened to an estate sold by a master, and the report had only been confirmed *nisi*, the loss would fall on the vendor. (*Ex parte Minor*, 11 Ves. 559, and *see* 1 Sugden on Vendors, 104, 469.)

Under this view of the case, the plaintiff must have judgment.

[This judgment was affirmed in the Court of Appeals. 5 N. Y. R. 151.]