Kortright *v.* Cady.

---

## KORTRIGHT *vs.* CADY and others.

An answer, alleging that on &c., the defendant tendered to the plaintiff's attorney the principal, interest and costs then due, without averring a readiness still to pay the same, or that the amount is paid into court, or offering to bring it into court, is defective.

An averment of a present readiness to pay, is an essential part of a plea of tender.

It is also essential to a perfect tender that the party should not only once offer the money, but that he should be always ready to pay it; so that a prior or subse-

Kortright *v.* Cady.

quent demand and a refusal to pay, is a good replication to the plea of tender, and makes the tender a nullity.

A tender of the amount due upon a mortgage, made after the day on which the mortgage money becomes payable, and after a foreclosure suit has been commenced, will not discharge the lien of the mortgage, so as to bar the bill for foreclosure.

Taxes assessed upon mortgaged premises are a lien thereon, and when paid by the mortgagee, they cannot be deemed to have been paid in reliance merely on the personal liability of the mortgagor, but in his character of mortgagee and with a view to transfer the lien from the estate to the mortgagee. In other words, the payment is made for the benefit of the land, and in reliance on it as liable therefor; and should be regarded as conferring a lien in favor of the mortgagee, and *as adding to the mortgage debt.*

APPEAL by the defendant, from a judgment entered at a special term. The action was brought against Joseph Blunt, John Holmes Agnew, and Emeline his wife, to foreclose a mortgage for the principal sum of $2400; $1500 of which had been paid. The mortgage was made by the defendant Blunt to Jonathan Miller, and by him assigned to the plaintiff; the plaintiff claimed also to recover the amount of certain taxes and assessments, paid on the foreclosure of a prior mortgage. After the commencement of the suit, Howard C. Cady was made a party defendant, by order of court, upon his petition, and he put in an answer, in which he alleged, among other things, that on the 28th of August, 1847, (after the commencement of this suit,) he tendered to the plaintiff's solicitor, at his office, and to B. T. Sealey, clerk and general business agent of the plaintiff, the sum of $1047.67 to pay the amount due in this suit, and the further sum of $10 for contingencies, which amount the plaintiff's solicitor and the said Sealey refused to accept, because they had been instructed by the plaintiff, who was then absent from the state, not to receive the same, for the reason that it did not include a sum alleged by the plaintiff to have been paid by him for taxes. And the defendant claimed that upon the making of the said tender by him, the mortgage ceased to be a lien upon the premises embraced therein. The complaint was taken as confessed, as to the defendants Blunt, and Agnew and wife. The cause was heard at special term, upon pleadings and proofs,

as to the defendant Cady. And a judgment was entered declaring that the mortgage was a valid and subsisting lien on the premises, and that said lien was not divested, or discharged or impaired by the tender set up in Cady's answer; and directing the premises to be sold to satisfy the same, and the costs of this suit.

*J. M. Van Cott*, for the appellant.

*J. Blunt*, for the plaintiff.

*By the Court*, MITCHELL, J. Blunt, owner of the lands in question, mortgaged them to Miller, who assigned the mortgage to the plaintiff. Blunt then conveyed to Agnew, expressly subject to the mortgage, and the latter in June, 1847, conveyed to Cady; but Cady does not set up in his answer that he paid any thing on the conveyance, or that he did not know of the mortgage, or was not to take subject to it. The deed to him purports to be for $3500, and contains full covenants, without any exceptions. This action was commenced in July, 1847, against all the defendants but Cady, under the old chancery system. The bill was amended by making Cady a party, in February, 1843, and he answered in that month. In his answer he alleges that he tendered to the plaintiff's attorney on the 28th May, 1847, the principal, interest and costs then due on the mortgage; but does not allege a readiness still to pay the same, or that it is paid into court; or offer to bring it into court; nor is that readiness found by the special term. This allegation is an essential part of a plea of tender. (*See* 3 *Chitty's Pl.* 923, *note k.* 1 *Saund.* 33, *n.* 2. 8 *East*, 168. 1 *Ld. Ray.* 254.) It is also essential to a *perfect* tender, that the party should not only once offer the money, but that he should be always *ready* to pay it; so that a *prior* or *subsequent* demand and a refusal to pay is a good replication to the plea of tender, and makes the tender a nullity. (3 *Chitty* 1155, 6.) Williams, in note 2 to 1 *Saund.* 33, says, "When the defendant has been at any time requested to pay, either *before* or after

the tender, and neglected or refused so to do, that *avoids* all tenders made *both* before and after such request." See also *Hume* v. *Tiploe*, (8 *East*, 168,) where Lord Ellenborough asked the defendant's counsel if he could show any case where an averment *tout temps prist* was holden not to be necessary in a plea of tender, and added, "it was expressly decided to be necessary in *Giles* v. *Hartis*, (1 *Ld. Raym.* 254,) and it *was one of those landmarks in pleading that ought not to be departed from.*" The case of *Sheriden* v. *Smith,* (2 *Hill,* 538,) does not sustain the position that a replication waives this defect, but only that it waives what is a mere *irregularity in practice,* the omission actually to bring the money into court, and to produce the certificate of its being paid in.

This imperfection, both in the actual tender and in the plea of it, makes the imperfect tender a *nullity,* and does not protect the defendant even from the payment of subsequent costs and interest.

It is said that the tender causes the lien of the mortgage to cease. That effect can arise only when the tender is complete, that is, when there is not only one offer to pay, but a continuing readiness to pay. In *Jackson* v *Crafts,* (18 *John.* 110,) the person making the tender proved that immediately after the tender he deposited the money with a third person, who continued to hold it ready to pay it over. In that case, and in *Edwards* v. *The Farmers' Fire Insurance and Loan Co.* (21 *Wend.* 467,) the actions were ejectment, in which there were no special pleadings, but the plaintiff merely alleged his lawful possession of the premises in general terms, without setting out his title, and the defendant merely denied the unlawfulness of his own possession. In the latter case the question was not raised of the sufficiency of the tender, but only of its effect, conceding it to be good.

But in this the answer shows that the defendant claims that his tender exempts him from paying, and thus excludes the idea of *an offer* to pay or readiness to pay, and there is no proof of either.

The tender in this case was made long after the day on which

Kortright *v.* Cady.

the mortgage became payable, and after the action was commenced against the mortgagor, and all parties but the defendant Cady, and when there was a controversy as to what was the precise amount due. It has been argued that this discharges the *lien* of the mortgage. If the question is to be decided without regard to authority, there could be little doubt that justice and policy would be against the proposition. When payment is delayed beyond the day prescribed by the condition, any uncertainty that follows is the result of this neglect of the debtor; payments may have been made of interest and of principal irregularly—receipts would be. in the possession of· the debtor, but the creditor might not have full memoranda of them— as in this case, the creditor might actually have paid taxes on the land, and reasonably believe that he might charge the amount against the mortgage, and yet that not be allowed to him on the trial. It would be very unjust in such a case, and destroy his lien and leave him only to a remedy against his *original debtor*, who would claim that when he sold subject to his mortgage, the lands became the principal debtor, and that as they were discharged by the fault of the creditor, he also should be discharged.

Decided cases are authority, first, in cases strictly similar, and secondly, as evidence of a pre-existing principle, on which they were founded. The decision may be right and the reasons assigned for it, or some of them, be wrong. Thus in the first case, in which it was said that a tender after the law day discharged the lien of the mortgage, (*Jackson* v. *Crafts*,) it is conceded that the authorities relied on by the learned judge applied only to a tender on the law day. (*See* 26 *Wend.* 557.) Laying aside, then, the *dicta* of the judges in the cases in this state, and it is decided as follows: In *Jackson* v. *Crafts*, that after a tender made of the whole amount due on a mortgage, after the law day, but while an advertisement *is pending*, the object of which is to *compel payment* of the mortgage, and when the tender is kept good by the money being kept ready for the mortgagee, and it is refused, in order to defraud the mortgagor of his title, there the mortgagor may defend his

possession against an action of ejectment brought by the mortgagee, or the purchaser, under the advertisement. It does not decide that he will not still hold subject to the mortgage, nor that the mortgagee might not foreclose if the tender was not kept good, and pleaded in the foreclosure suit with a *tout temps prist*. In *Edwards* v. *Farmers' Fire Ins. and Loan Co.* there was no question raised as to the perfect and continued goodness of the tender. *If* the case turned on the question of tender, it was decided that a tender made after the law day contained in the bond, but which was *extended* by the charter of the company to such indefinite period as the lands should remain unsold in the ownership of the company, entitled the mortgagor to recover the lands in an action of ejectment against the company claiming to own the lands *in fee*, but not in possession, as they were vacant lands. No disputed principle of law would be involved in such result.

Next, to proceed beyond the point *necessarily* involved in the cases. In the last case Justice Cowen insists that a tender after the law day is as effectual as on the law day, and quotes Lord Coke, speaking of a condition, that if it be refused the debtor may enter and the *land* is freed from the condition. (21 *Wend.* 488.) And it may have been his opinion that a single tender after the law day, or a refusal to accept it, although followed by an immediate offer afterwards to take the money and a refusal then to pay it, or by an utter inability to pay it afterwards, discharged the lien, so that there could be no foreclosure in equity; but he never expressed that precise opinion. He follows up the quotation from Lord Coke and the reference to *Jackson* v. *Crafts*, by a remark which seems to limit their effect. He says, " such a tender and refusal were then received *as so far equivalent* to payment that they raised the lien and *barred an ejectment*." Did he mean more than that they raised the lien so far as to bar an ejectment? That was all that the case cited, or the quotation from Lord Coke, necessarily decided. Lord Coke was speaking only of the *legal* right to an entry on the land, not to the lien inferable in equity, and that was all that was involved in *Jackson* v. *Crafts*. *Ed*-

*wards* v. *The Farmers' Fire Ins. and Loan Co.* was affirmed in the court for the correction of errors, by a vote of 11 to 8; the chancellor and 7 others voting for a reversal, on the grounds stated by him in *Merritt* v. *Lambert,* (7 *Paige,* 344;) Senator Verplanck delivering the only opinion for affirmance, which corresponded with that of Justice Cowen. In the supreme court Ch. J. Nelson "concurred in the conclusion" of Justice Cowen, but is not said to have assented to the reasoning. Justice Bronson dissented. The same question had been before the vice chancellor of the 1st circuit, in *Merritt* v. *Lambert,* on a bill to compel the performance of a contract to buy those lands after the tender by Edwards, and he concurred with the chancellor. The assistant vice chancellor dismissed the bill, not on the ground that the tender was good, but that a contract by the company to sell the lands was not a sale of them, within the meaning of their charter, and therefore Merritt, who had made such a contract before the tender, could not give a good title. (*See* 26 *Wend.* 551, *note.*)

The senators who voted to affirm, without assigning their reasons, may have done so for the same reason as the assistant vice chancellor dismissed the bill. That reason would probably be now approved by all. The parties cared comparatively little about the tender, as Mr. George Wood, the counsel for the company, said, " the *only important* question was whether, after the contract with the Merritts, the property in question could be considered as still remaining in the hands of the defendants unsold." That is, the question was not whether the company could enforce its lien as mortgagee, but whether it could claim the lands as owners in fee. Such, also, was the question in *Jackson* v. *Crafts.*

Afterwards came the case of *Arnot* v. *Post,* (6 *Hill,* 65.) There the lands had been sold on the foreclosure of a mortgage by advertisement, and the defendant Post was in possession on such sale. Arnot, after the sale, tendered the principal and interest on the mortgage and the costs of foreclosure, which being refused, he brought ejectment to recover the lands, he having purchased at a sheriff's sale on a judgment inter-

Kortright *v.* Cady.

mediate between the mortgage and the foreclosure sale. The supreme court held the tender good, though made after the law day and after the foreclosure, and that as the statute declared that the rights of such judgment creditors "should not be prejudiced by any such sale," (2 *R. S.* 546, § 8,) they could bring ejectment after a tender. The court of appeals reversed their judgment (2 *Denio*, 344) by a vote of 11 to 9. Senators Bockee and Clark expressly holding that a tender after the law day did not discharge the lien of the mortgage; senators Johnson and Sedgwick also agreeing in that view, and holding besides, that the remedy of the judgment creditor was only in equity, to redeem. Senator Hard also was for reversal on both grounds, holding the doctrine of the supreme court as to tender at least questionable, and placing the decision of *Edwards* v. *Farmers' Fire Ins. and Loan Co.* on the charter of that company. Senator Porter, voting for a reversal, said nothing about the tender, but in an elaborate and able argument sustained the position that the only relief was to the judgment creditors and was in equity only. The other senators voting for affirmance, did so without stating their reasons. They may have done it on both grounds; and it is believed that the reversal has been generally understood as sanctioning the position that the lien of a mortgage was not so far discharged by a tender and refusal after the law day as to bar a bill for foreclosure of the mortgage. No case has yet decided that such was the effect of a tender, and there is no reason for establishing such a rule now.

There is another point which was not argued, but on which also the judgment should be affirmed. The plaintiff, while holding the mortgage, paid the taxes due on this lot, about the month of May, 1847. The taxes were a lien on the land, and when paid by the mortgagee cannot be deemed to have been paid in reliance merely on the personal liability of the owner of the lands, but in his character of mortgagee, and with a view to transfer the lien from the state to the mortgagee; in other words, the payment is made for the benefit of the land, and in reliance on it as liable therefor, and should be regarded as con-

ferring a lien in favor of the mortgagee, and as adding to the mortgage debt. Both the state and the mortgagor are interested in having such a construction of the law; the state in having taxes promptly paid, without which the wheels of government must be stopped; the mortgagor in saving the extra interest claimed by the state where there is delay in paying taxes.

The judgment should be affirmed with costs.

[NEW YORK GENERAL TERM, February 12, 1857. *Mitchell, Davies* and *Roosevelt*, Justices.]