CHARLES KING, EDWARD J. KING, and SYLVESTER BRUSH, Respondents, *v.* WILLIAM H. PLATT, SPENCER C. PLATT, and NATHAN C. PLATT, Executors of NATHAN C. PLATT, Deceased, Appellants.

*Constructive fraud—Specific performance—Judicial sale—Election day—Statute, Construction of.*

A judicial sale, although conducted by an officer of the Court, and under its direction, is not the business of the Court within the meaning of the statute providing, that "no Court shall be open or transact any business in any city or town on the day of elections, for other than town or militia officers."

But a sale made against Defendant's remonstrance on a day most unfavorable to a large gathering, and the lots sold in an order which induces a reasonable belief that it was detrimental to Defendant's interest, and under circumstances giving rise to apprehensions that free competition was interfered with, in equity it will be set aside.

THE action was brought in February, 1861, to compel the specific performance by Nathan C. Platt, the original Defendant, since deceased, and now represented in the action by the present Defendants, of an agreement to purchase real estate in the city of New York, which agreement was made September 6, 1860. The Defendant not having complied with the terms of the agreement, for the alleged reason that outstanding judgments unsatisfied existed as a lien upon the property, and not having answered the complaint, judgment was entered in favor of the Plaintiffs on the 15th of March, 1862. By this judgment it was determined that the balance of the purchase-money unpaid, with interest, was $78,412.60, and it directed the Defendant to complete the purchase within ten days, by paying the costs of suit, &c., and $22,160.60 of the purchase-money due, and to execute and deliver his bond and a mortgage on the premises for $56,250, payable October 6, 1866, with semi-annual interest; and that in default of so doing the premises should be sold at public auction; and that the Defendant should be liable for any deficiency that might occur on such sale.

The Defendant did not appeal from this judgment, nor comply with the terms thereof. Accordingly, the premises were adver-

tised for sale, under the terms of the judgment, on the 18th November, 1862, and the same were sold at public auction on December 2, 1862, when the property was bought in by or on behalf of the Plaintiffs, at a price which left a deficiency of about $10,000 against the Defendant; and on December 22, 1862, the premises were conveyed by the referee on the sale to the Plaintiffs, the report having been duly confirmed.

On February 12, 1863, the Defendant procured an order requiring the Plaintiffs to show cause why the sale should not be set aside, and a resale ordered.    The affidavits to sustain this order, and the motion made thereon, disclosed the following causes or grounds of complaint:

1. That the sale was made on the day of a charter election in the city of New York.

2. That the auctioneer named in the notice of sale did not personally officiate at its commencement.

3. That the price bid was inadequate.

4. That the Plaintiffs approached bidders at the sale, and deterred them from bidding, and prevented competition.

The counter-allegations denied Nos. 3 and 4 of these charges, and, on the hearing of the motion at Special Term, it was referred to a referee "to take proof whether any, and if so, what, inducements, communications, or representations were made or held out by the Plaintiffs or their agents, or in their behalf, or by the referee, to deter or prevent bidding at the sale."

On the coming in of the report, made in pursuance of said order, and on the 18th December, 1863, the motion was denied.

On an appeal to the General Term, the order of denial was affirmed, January 23, 1865.    The Defendant now comes to this Court, on appeal from the order of the General Term.

*William R. Martin* and *James Emott* for Appellants.

*John H. Reynolds* for Respondents.

FULLERTON, J.—The sale of the Defendant's property was not void because it took place on the day of the charter election in the city of New York.

The statute provides that no Court shall be opened, or transact any business in any city or town, on the day of elections, for other than town or militia officers (1 R. S., 5th ed., p. 418, §§ 4 & 5).

A judicial sale, although conducted by one of the officers of the Court, and under its direction, is not the business of a *Court,* within the meaning of this statute. The object of the law refer-red to, undoubtedly, was to remove all obstacles which might necessarily interfere with the free exercise of the elective franchise. If the ordinary business of the Courts were permitted on election days, the attendance of witnesses and jurors could be compelled by compulsory process, and in that way they could be forcibly kept from the polls.

It was to avoid such an evil that the statute was passed. A judicial sale of valuable property on an election day, presenting a tempting opportunity for gain, might induce sordid men to forego the privilege of electors in order to promote their private interests; but their action would be voluntary, and freedom of action was all the law intended to secure.

The propriety of a forced judicial sale of a large and valuable property on an election day, when public attention would necessarily, to a great extent, be turned to other objects, after a written notice from the person who was to be most affected by it that he would consider it "unjust and oppressive," was, at least, very questionable; and although not of itself, perhaps, sufficient to warrant the Court in setting aside the sale, yet in connection with the other facts disclosed in this case, cannot fail to create in the mind an influence unfavorable to the Plaintiffs.

The property which was the subject of this sale consisted of eight lots, situate on the corner of Fifth Avenue and Fifty-ninth street, in New York city, at one of the entrances to the Central Park.

The order in which these lots should be sold was considered by the Defendant a matter of interest to him, and, consequently, on the day of sale, he made a written request that the *corner* lot, which was conceded to be the most valuable, should be sold first.

This request was made with the view to cause the property to bring the largest price, and was therefore a proper and reasonable one.   It was not, however, acceded to, and the lots were sold in a different order.   I have examined the papers in this case with care, to see what reason was assigned or could have existed for this course, and I have been unable to find any that is satisfactory.   The referee who sold the property states, in his affidavit, that " in the exercise of his discretion " he caused the premises to be sold in parcels, and in the order adopted at the sale.

That the referee acted in good faith, so far as *his* action is concerned, his well-known character for integrity leaves no room to doubt; but no reason for believing that the sale of the corner lot first, as requested, would have been *detrimental* to the sale, having been furnished by the affidavits, or suggested on the argument, I cannot but think that the referee's discretion was exercised unwisely. That the Defendant's request was made in good faith, and founded on the belief that, if granted, it would have increased the amount which the whole property would have brought, cannot be doubted, and in that opinion he is sustained by six other persons who are experienced in the sale of property of a like character in the city of New York.

The case, therefore, resolves itself into just this : that while the sale of the corner lot *first could do no harm*, there was good reason to believe that it would result in a *benefit*.   Under such circumstances it is difficult to arrive at any other conclusion than that the Defendant was unfairly dealt with.   Whatever chance there was, however slight, that the order of sale he requested should be adopted would prove beneficial, he was entitled to, and to deprive him of it was a constructive fraud.

I have not overlooked the affidavits, on the part of the Plaintiffs, expressing the opinion that the property would have brought no more than it did, if the corner lot had been sold first; yet I can see no good reason for not trying, at the least, a harmless experiment to gratify a reasonable request of a failing and unfortunate debtor, which he thought would result to his advantage.

I do not agree with the learned counsel for the motion that

the Defendant had the right to determine the order of sale, and the authorities quoted do not sustain that position. But, in the absence of all directions by the Court, the Defendant has a right to be heard on the subject, his suggestions considered, and if for the best, followed.

· But in the light of the other facts in this case, it is difficult to believe that the refusal to accede to the request was the result of indifference or mere caprice. The Plaintiffs bought the whole of the property at the sale. Their right to do so, of course, is not disputed.

If it were fairly done, without any undue advantage, a Court of Equity would not interfere with the sale. But, besides matters already considered, there are facts disclosed in the papers which give rise to serious doubts as to the entire fairness of the Plaintiffs' conduct at the sale.

From the whole evidence, it satisfactorily appears that the Plaintiffs manifested a desire, before the sale, to purchase the whole of the property, and resorted to the means necessary to accomplish their object.

Raynor, who sustained intimate friendly and business relations with the Plaintiffs, and who acknowledged that he would have the selling of the property as broker, in case the Plaintiffs should purchase it, said to a bidder at the sale that he could purchase the property in one parcel, *after* the sale, upon better terms than he could get it *then* by bidding.

Raynor also testified that he made this communication at the request of one of the Plaintiffs.

That this had a tendency to prevent competition at the sale, can. hardly be denied; and whether this effect was designed or not, it is equally fatal to the validity of the sale.

There is other evidence tending to show that the sale was chilled by the course pursued by the Plaintiffs; but it is unnecessary to pursue the subject further.

The sale having been made against the Defendant's remonstrance, on a day most unfavorable to a large gathering, and the lots having been sold in an order which induces a reasonable belief

that it was detrimental to the Defendant's interests, and under circumstances which give rise to apprehensions that free competition was interfered with, it ought not to stand.

Whilst the Court secures to the creditor his just demand, and sequestrates the property of the debtor to satisfy it, it still sedulously guards his interests in all the various steps taken leading to a sale of his property. The unfortunate debtor is not beneath its protection. It will not tolerate the slightest undue advantage over him, even by pursuing the strict forms of the law, or positive rules (Story's Eq. Jur., § 239).

Occupying the position of advantage, it behooved the Plaintiffs to pursue their remedy with scrupulous care, lest they should inflict an injury on one who was comparatively powerless.

A Court of Equity justly scrutinizes the conduct of a party placed by the law in a position where he possesses the power to sacrifice the interests of another in a manner which *may* defy detection, and stands ready to afford relief on very slight evidences of unfair dealing, whether it is made necessary by moral turpitude, or only by a mistaken estimate of others' rights.

I feel quite convinced that sufficient reasons exist for setting aside this sale, and that justice will be subserved by doing so, for it cannot result in any loss to the Plaintiffs.

The rights of third parties do not intervene, and the Plaintiffs have a lien for the taxes and assessments they have paid (Kortright v. Cady, 23 Barb. 490). A resale will probably result in satisfying the judgment and all the outlays of the Plaintiffs, and that is all they can reasonably ask.

If the parties fail to agree upon the order in which the property shall be sold, either party can apply to the Court for instructions to the referee (Collier v. Whipple, 13 Wend. 229).

The orders of the General and Special Terms should be reversed, the sale set aside, and a resale ordered.

All concur except PARKER, J.

PARKER, J. (dissenting).—This was an application to the Supreme Court to set aside a sale of real estate had under a judgment in

the action, which was for a specific performance, and for a resale of the premises, on the grounds that the sale, which was in the city of New York, was made on the day of the charter election in that city; that the referee refused to sell the lots in the order requested by the Defendant; and that the Plaintiff, with a view to bid off the premises himself, discouraged bidders from bidding, whereby he was enabled to purchase the property at less than its value.

The sale cannot be pronounced irregular because held on the day of the charter election, for the prohibition of the statute against the transaction of business by courts upon the day of election does not extend to judicial sales. The circumstance of a sale being held upon that day, against the remonstrances of the Defendant, may be an element in a case made for setting it aside as unreasonably conducted, when, in consequence of such election, bidders did not attend, and the property for such reason failed to bring a fair price. But no such facts appear in this case.

The refusal to sell the lots in the order requested by the Defendant is, in verity, no reason for setting aside the sale. It does not appear that the referee abused his discretionary authority in regard to the order of selling, or that the Defendant is harmed by such refusal. The only subject of inquiry is, whether the Plaintiff so interfered as to prevent or discourage bidders from bidding, to the prejudice of the Defendant.

The evidence, I think, comes short of showing any such interference. It is a sufficient answer to this allegation of the Defendant, that the whole evidence, without any contradiction, shows that the property brought all it was worth. Not a single witness swears that he would have been willing, on the day of sale, to give more for the property than it brought on the sale.

Several, it is true, speak in general terms of its having been sold at low prices; and two say if it were "*now*"—that is, at the time of swearing, which was some months after the sale—put up at auction, it would bring considerably more than it did bring on the sale.

But it is shown that between the day of sale and the time thus

spoken of, gold had advanced from 131 to 150 and more, and that real estate had risen in the market from that cause, as well as from an increased desire to invest in it. The sale was fairly conducted, and the property brought all it was worth. The Defendant should not now be permitted to speculate out of the rise of property, after having omitted to take any measures to have the lots bid in for his own on the day of sale.

The order denying his motion was properly affirmed by the Supreme Court, at General Term; and the order of affirmance should here be affirmed, with $10 costs.

Reversed.

JOEL TIFFANY,
State Reporter.