Woodward v. Bullock.

WOODWARD, appellant, and BULLOCK, respondent.

1. An order refusing to set aside a sale on foreclosure of a mortgage in chancery, is appealable.

2. The right of the Court of Chancery to set aside sales made by its officers, cannot be doubted upon a proper case made by petition.

3. Where a cause has been defended below and comes up for review and a point is made which was overlooked, and which could not be obviated in the court below by proof or amendment, the court, on appeal, will not refuse cognizance of such point and send it back to the Chancellor for a re-hearing, but will hear and decide it.

4. Where the purchaser and sheriff stated to bidders the amount of certain legacies charged on the lands, at fixed amounts, when the payment was contingent, and the sums not apportioned between different parcels of land, the sale will be set aside.

5. A judicial sale will be set aside where there is surprise or misapprehension created by the conduct of the purchaser, or of the officer who conducted the sale.

On petition to the Chancellor by the appellant, to set aside the sale of a farm, made by the sheriff of Monmouth county, March 31st, 1874, under decree of foreclosure of mortgage and sale, in an action wherein Mary J. Bullock, Anthony Bullock, and George Sykes, executors of William W. Bullock, deceased, were complainants, and the appellant and others the defendants, and that said sheriff be restrained from executing and delivering a deed therefor to said Anthony Bullock, the purchaser ; it was ordered and decreed that the prayer of the petitioner be denied, and his petition dismissed. 10 *C. E. Green* 279. From this decree, an appeal is taken to this court.

*Mr. W. H. Vredenburgh* and *Mr. B. Gummere*, for appellant.

*Mr. G. S. Cannon* and *Mr. F. Kingman*, for respondent.

The opinion of the court was delivered by
SCUDDER, J.

It is said by the appellee, that this is not an appealable
order or decree, and that the appeal should be dismissed for
want of jurisdiction in this court. Our statute enacts that
" all persons aggrieved by any order or decree of the Court
of Chancery, may appeal from the same, or any part thereof,
to the Court of Errors and Appeals," &c. *Rev.* 1874, *p.* 82,
§ 114. The appellant is surely aggrieved by this order, if,
as he claims in his petition, his homestead farm is sold from
him by an illegal sale and for an inadequate price, caused by
mistake and misrepresentations, and all relief is denied. It
reaches the merits of the controversy between him and the
purchaser, and affects his substantial rights in the cause. It
is thus within the reasoning of the opinion of this court in
*Camden and Amboy R. R. Co.* v. *Stewart,* 6 *C. E. Green*
484 ; and the facts agree with the case of *National Bank*
v. *Sprague,* 6 *C. E. Green,* 458, where there was an appeal
from an order to set aside a sale in chancery, because it
was illegal. It was there decided that such order was
appealable, and not merely discretionary. A full considera-
tion of the principles involved will be found in these cases,
which rule this, and determine that the order is appealable.

The right of the Court of Chancery to set aside sales made
by its officers, and restrain the delivery of the deeds to pur-
chasers, cannot be doubted upon a proper case made. Where
such sales are conducted contrary to the requirements of law,
or when, through fraud or mistake, injustice has been done,
they will be set aside. And this is done even when the pur-
chaser is not a party to the suit, for, by such purchase under
a legal sale, he becomes subject to the jurisdiction of the
court by whose judgment and execution it is made. See
*National Bank* v. *Sprague, supra.* Here the purchaser,
Anthony Bullock, as one of the executors of William W.
Bullock, deceased, was a complainant in the suit for fore-
closure under which the sale was made. There is, therefore,
no difficulty because proper parties are not before the court.

Woodward *v.* Bullock.

The main point relied upon in the case presented to the Chancellor, was that the facts show that all the bidders excepting William W. Conover and Anthony Bullock, the purchaser, up to the time the property was struck off, believed it was sold subject to a mortgage held by Edward Black, amounting, with interest, to about $5000. For this reason, some refrained from bidding after Bullock raised his bid, at one offer, from $1400 to $4000. These facts are carefully reviewed by the Chancellor in his opinion, and he comes to the conclusion that there was no improper or unfair conduct imputable to the sheriff or his deputy, and that the purchaser, so far from interfering to prevent competition, gave information before and at the sale, to induce others to buy. We think his conclusions on these facts were correct.

But there is a point that was not in the brief of the counsel who argued the case before the Chancellor, nor presented for his consideration, which so seriously affects the parties interested in this sale, that it demands the careful scrutiny of this court. This point was not purposely withheld, otherwise it would be instantly rejected; but it was overlooked until suggested here during the argument.

It is sometimes said that this court, on appeal, will not permit parties to raise objections which they did not present to the court below, not only in justice to that court, but also to prevent surprise and abuse by reserving points expressly for further litigation. These results should always be guarded. But where the entire proceedings are before the appellate court for review, there can be no reason, where there is no intentional omission, and the parties have acted in good faith, why the whole case should not be examined and determined on appeal. It would cause needless delay and expense to send the cause back to the Chancellor for re-hearing, upon the same pleadings and facts, when the result might be that the cause would be returned here for the further consideration of this court.

In *Beekman* v. *Frost*, 18 *Johns.* 544–559, the reasoning

on this subject is clearly stated.  See also *Murray* v. *Costar*, 20 *Johns*. 604.  Where a cause has been defended below, and comes up for review, and a point is made here which could not be obviated in the court below, by proof or amendment, this court ought not to refuse cognizance of such point. This court loses the benefit of the reasoning of the court from which the appeal is taken ; but the more careful and ' repeated preparation of the cause for re-argument here, gives the appellate court great advantages in reaching the full merits of the controversy between the parties.  It cannot ' therefore consist with sound reason or a regard for justice, that this court should refuse to hear and consider a point which may decide a cause, because it has not been before observed.  A fuller and more exact examination of a cause in all its bearings, than is often possible on its first presentation, is the most important office of the higher court on appellate proceedings, and for this they have great advantages, both in the constitution of the court, where several judges may confer, and from the previous discussion and preparation in the former arguments and decision.  The same reasoning above given is conclusive in this case, for no additional proof or amendment would change the matter to which reference is made.  This court may, therefore, consider and decide the omitted point, and need not send it back to the Chancellor for re-hearing.

It appears that, at the sale, and prior thereto, the legacies to Emily Woodward, amounting to $10,000, and to Mary B. Woodward, amounting to $4000, given to them by the last will and testament of Robert Woodward, deceased, and charged upon the farms devised to Edward B. Woodward and Robert Woodward, the petitioner, were estimated as fixed and absolute encumbrances charged on these lands, and to be paid in the proportion of one-half by the purchaser of this farm. The course of the bidding is thus stated by the witnesses.  It was first, apparently, the understanding that the farm was being sold subject to the Edward Black mortgage of about $5000.

This, with the one-half of the two above legacies, and the interest thereon, in all $7450, made the encumbrances $12,450. The farm was bid up to $1400 above these supposed encumbrances, by Dr. James M. Bean, who was an eager bidder for it.    After an interval of about five minutes the bidding continued, and Anthony Bullock, the purchaser, bid $4000.    He clearly understood that the Edward Black mortgage was not to remain on the property.    William W. Conover also bid with the same knowledge, alternating bids with Bullock until he bid $5050.    Bullock bid $5100, and the property was struck off to him.    Others did not bid, they say because they supposed the Edward Black mortgage was on the property, and the bidding, with that included, was higher than they were willing to go.    This mistake on the part of the bidders, arising from their carelessness or ignorance, where the sale was fairly conducted in the presence of the complainants in the suit, and the owner of the property, would not be sufficient, as the Chancellor has decided, to set aside the sale. But Anthony Bullock, the purchaser, says that James M. Bean, one of the bidders, came to him before the farm was sold, to see what liens were on the property, so that he might know how to bid, and he gave him the liens and instructed him how to bid.    He also says that he charged him that on the large farm, No. 2, of one hundred and sixty acres, that he would bid on top of the legacies or liens in the will.    He told him that they amounted to $7450.    This sum included the interest.    He told him also that he received his information about the arrear of interest from Emily Woodward and Robert Woodward, and that he was willing to take an affidavit that the interest was $450.    He was thus particular in making the statement of the amount of legacies and interest charged on the farm.    He also says that, while the property was selling, he stepped back into the crowd and told them (the bid being then $4600) that it was then being cried at $12,100, with the legacies; that he had a paper in his hand and kept the amount of the bidding.    He says that when he bid $5100 he added $7500 to it, and $40 for sheriff's fees,

and $170 for expenses, and found it came to about $12,750, and made up his mind to bid no more.    William W. Conover, the highest bidder next to the purchaser, says he understood the one hundred and sixty acres were sold subject to a legacy of about $7000 ; that he obtained this information that it was so sold, from Sheriff Hendrickson ; that he bid for the property with that understanding, and declined to advance his bid beyond $5050.    Bullock bid $5100, and it was struck off to him.

It thus appears that both the officer entrusted with the sale of the property, and the purchaser, made representations to bidders at the sale relative to the amount of these legacies that were charged on this farm, and their bids were affected by such information.    Both the sheriff and Mr. Bullock doubtless spoke what they believed to be true.    The sheriff probably derived his information from Bullock.    But the statement was not true.    The legacies had never been apportioned upon the respective farms devised to Robert Woodward and Edward B. Woodward, except by a parol arrangement that each should pay one-half the interest.    But more important still, Emily Woodward was only to receive the interest of her legacy of $10,000 during her life, and at her death, if she left no lawful issue, the legacy was to revert back to Robert Woodward's estate, and his residuary legatees were to be forever exempt from paying the same.    She was fifty-three years old at the time the property was sold, and unmarried.    It was almost a certainty that she would have no issue, and the residuary legatees would not be charged beyond the payment of the annual interest of her legacy during her life.

The legacy to Mary B. Woodward of $4000 was with the same conditions, but as she was only seventeen years old, there was a greater probability that she would marry and have issue, so that the legacy would become absolute.    The residuary legatees were Edward B. Woodward and Robert Woodward.    These legacies were charged on their farms, and if either Emily or Mary died without issue, the farms were

Woodward *v.* Bullock.

discharged from payment. The purchaser of Robert Woodward's farm took it upon these conditions, and may never be obliged to pay any proportion of the principal of these legacies. The value of these legacies was not equal to the amount stated to the bidders by the purchaser at and before the sale.

In *Marlatt* v. *Warwick and Smith*, 3 *C. E. Green* 121, one of the purchasers had a paper stating the amount of encumbrances, which made them $3000 more than the actual amount. The Chancellor said that if the paper were shown by him, the fact that the encumbrances were overstated would be sufficient to set aside the sale. Such a misrepresentation made by the person who became the purchaser, whether innocently or fraudulently, should set aside the sale.

A judicial sale will be set aside where there is surprise, or misapprehension created by the conduct of the purchaser, or of the officer who conducted the sale. *Lefevre* v. *Laraway*, 22 *Barb.* 167; *King* v. *Platt*, 37 *N. Y.* 155; *Collier* v. *Whipple*, 13 *Wend.* 224; *Seaman* v. *Riggins*, 1 *Green's Ch.* 214; *Campbell* v. *Gardner*, 3 *Stockt.* 423; *Cummins* v. *Little*, 1 *C. E. Green* 48.

There has been such misapprehension in this case, and the order refusing to set aside the sale should be reversed, but without costs to either party in this court or in the court below.

For reversal—BEASLEY, C. J., DEPUE, DIXON, GREEN, KNAPP, LATHROP, LILLY, REED, SCUDDER, VAN SYCKEL. 10.

For affirmance—CLEMENT, WALES, WOODHULL. 3.