WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
May, 1879.

## LEVINESS *v.* CASSEBEER.

## *In the matter of the estate of* HENRY J. MEYER, *deceased.*

While unpaid taxes, assessed upon a decedent's real estate prior to his death, are preferred debts to be paid by the executors out of the estate (2 R. S., 87, § 27), yet where a mortgagee of the property so assessed has, subsequent to the death of the mortgagor, bought it in at a foreclosure sale, the terms of which prescribed that the taxes were to be

paid out of the purchase money, and the latter not proving equal to the amount due on the mortgage, the mortgagee thereupon having paid the taxes has no valid claim to be reimbursed therefor out of the assets of the mortgagor's estate. Where such taxes are otherwise properly paid, the duty of the executors to discharge them ends.

*So held,* also, of a mortgagee who had, upon like terms, bought in the property mortgaged to him, but had not paid the taxes.

A mortgagee who has taken possession without foreclosure and thereafter paid such taxes, is not entitled to demand the amount out of the general estate.

*It seems,* however, that if they are paid by the executors in the first instance the amount should be allowed in their accounts.

Where upon an accounting of the executors the amount of such taxes was claimed by the mortgagee, who had so paid them,—*Held,* that, the executors showing that a question, in good faith, existed as to the validity of the claim, the jurisdiction of the Surrogate to pass upon it ceased.

A question as to the validity of a claim appearing on an accounting of executors, though they do not contest it, jurisdiction to adjudicate upon it cannot be conferred upon the Surrogate by consent.

*So held* where the claim was preferred by one of the executors and other similar claims appeared to be unfounded.

The Surrogate's Court has no jurisdiction to direct a payment by executors to one who acquires a claim against the decedent's estate by subrogation.

HENRY J. MEYER died November 4th, 1877, seized of certain real estate in Westchester county, where he resided, and also of several parcels of real estate in the city of New York, all of which had previously been mortgaged by him to different persons. He left a will, which was duly proven, and the executors thereafter applied for a settlement of their accounts as such. The estate was insolvent. Several persons appeared and represented that they were mortgagees of the testator, who had foreclosed their mortgages since his death, and bought in the premises for less than the amounts secured; that they paid the taxes thereon assessed prior to his death, and asked, in effect, that the amounts of such taxes be paid to them out of the assets in the hands of the executors. Other mortga-

gees entered into possession without foreclosure, and one of them, an executor of Meyer's estate, paid such takes and sought repayment out of the same fund. One of the mortgagees, who purchased the premises at the foreclosure sale, had not paid such taxes, and asked that the executors be directed to pay them. There were a large. number of other creditors, upon whose claims the assets would only pay a very small percentage.

A. B. TAPPEN, *for the executors.*

WARREN G. BROWN, *for executors of Lockwood, claimants.*

C. W. BENNETT, *for executors of Millers, claimants.*

M. G. HART, *for Leviness, claimant.*

R. D. HARRIS, *for Catherine M. Harris, claimant.*

HASKALL, STETSON & STEDMAN, *for Gillilan, claimant.*

WM. MENK, *claimant in person.*

THE SURROGATE. — The claims made in this case are novel. None of them existed in the hands of the claimants at the time of the death of the testator, but have arisen since, and are based upon the fact that they have paid, or will be obliged to pay, moneys which the executors should have paid, and which had a preference of payment over ordinary debts. For convenience of examination I will make two classes of these claims. In the first are those of the executors of Lockwood, the executors of Miller, Leviness and Gillilan. They, except Gillilan, claim to have paid taxes assessed against the estate of the deceased during his life time, under the following circumstances: They have foreclosed mortgages since his death executed to

them severally by the testator during his life, put the property up for sale under the usual terms, providing for the payment of taxes out of the purchase money (except in the case of Miller), purchased in the premises, and all, except Gillilan, have paid the taxes thereon.   In the second class, are the claims of Menk, mortgagee in possession, who has paid the taxes. The amount of taxes so paid by the executors of Lockwood was $721.30; by the executors of Miller, $954; by Leviness, $137.07; by Menk, $1,089; and the amount due for taxes on Gillilan's purchase and interest, $946.35.   All of these parties ask to be subrogated to the rights of the taxing power, except the last, who claims that, by virtue of an agreement among the parties to the foreclosure suit, the taxes are to be paid out of the assets.

There can be no question but that these taxes were preferred debts, to be paid by the executors in due course of administration.   (2 *R. S.*, 87, § 27.)   Had they paid them and then claimed credit therefor in their account rendered, they would, doubtless, have been allowed; but that they have not done, and this court is now asked to direct them to do so.   Although it was their duty to have paid them, yet I apprehend, where they are otherwise properly paid, that duty ends.   I can find no case, and have been referred to none, which determines that the payment of taxes by a person having a subordinate lien entitles him to be subrogated to any rights other than those affecting the lien upon the land.   These taxes were, in effect, paid out of the estate, the terms of sale in every case, save one, making provision therefor.   Had the property

been sold for a sufficient sum to have paid the amounts due upon the mortgages, together with the costs and expenses and the taxes, then clearly the estate would have paid them. Had a stranger purchased them, under the terms of sale, for sums less than the amounts of the judgments, and then paid the taxes and been allowed therefor, according to such terms, he could not have been subrogated to the rights of the taxing power any farther than the liens upon the lands were concerned; and the mortgagees, because of the payments out of the proceeds, to which they would have been entitled if the executors had paid the taxes, could have based no claim on that fact to be reimbursed their amount out of the assets of the estate. How, then, can they have a legal or equitable claim where they themselves have purchased under such terms of sale? I hardly think there can be two different rules upon the subject—one applicable to the case of a stranger purchasing and the other to that of a party. As, however, the claims must, with a possible exception, fail on other grounds, I do not propose to go farther into the reasons which lead me to the conclusion that these claimants have no right to the relief sought.

The books are full of cases showing that courts of general jurisdiction have long exercised the power to enforce the right of subrogation. Among the more recent ones, counsel have referred me to Silver Lake Bank v. North (4 *J. Ch.*, 370); Eddy v. Traver (6 *Paige*, 521); Kortright v. Cady (23 *Barb.*, 490); Robinson v. Ryan (25 *N. Y.*, 320); Patterson v. Birdsall (6 *Hun.*, 632); Dings v. Parshall (7 *id.*, 522); and Ellsworth v.

Lockwood (42 *N. Y.*, 89).   All of them were instituted in the Court of Chancery or in the Supreme Court, and none of them meet the difficulty encountered here. Surrogates' Courts cannot, as I held in the case of Hitchcock *v.* Marshall (2 *Redf.*, 174), decree payment to an assignee of a creditor, next-of-kin or legatee. In that case, two persons appeared, each claiming to be the assignee of one of the next-of-kin, and if payment could be decreed to an assignee, then it followed that the controversy as to which was the assignee could be determined by this court.   I did not think·it had any such power, and, on further reflection, my opinion in that respect is strengthened.   No court should seek to exercise a jurisdiction not conferred upon it, nor a doubtful power, when the doubt is a reasonable one. This should be especially regarded by courts which have all their powers defined and limited by statute law.   They should carefully.avoid encroachments upon the proper and exclusive domain of other and higher tribunals.

Now, if it be true that payment cannot be decreed to a voluntary assignee, I conclude it cannot be done to one to whom equity operates a virtual assignment or transfer.   The Ecclesiastical Courts formerly acted under the rules of the civil law and had no common law jurisdiction.   Our like courts are now declared to have certain legal and equitable powers, but their exercise is limited to cases and matters springing directly from statute law.   The right of substitution or subrogation had its source in the civil law, and its benign principles have long been acknowledged and exercised by courts of equity; but I find no statute conferring

such a broad power, nor one from which it can be reasonably inferred, upon this court.

The case of Jumel v. Jumel (7 *Paige*, 591), cited by counsel as establishing the power of the Surrogate to determine an equitable as well as a legal claim, and to dispose of a claim of right to subrogation, was a case involving the consideration of a claim made by the administratrix. The Chancellor stated that "the only question arising upon the appeal was, whether the administratrix was entitled to be allowed, upon the settlement of the account and the distribution of the estate, for the principal and interest upon a bond and mortgage paid by her" under circumstances which he proceeds to state. It will thus be seen that the Surrogate, having by statute full power to try and adjudicate a claim of an executor or administrator against the estate, had complete jurisdiction over the matter and could, in considering it, dispose of any legal or equitable question necessary to its proper adjustment, whether involving a voluntary assignment or an equitable transfer. The case of Gardner v. Gardner (*id.*, 112), was a similar one in so far as the point under consideration is concerned. It is clear that the learned Chancellor did not there intend to say that Surrogates had the general power of determining a question of right of subrogation; although, from the fact that he uniformly held they had the power to hear and adjudicate disputed claims against an estate, he would have been consistent in so holding in reference to such claims. But the Court of Appeals, in Tucker v. Tucker (4 *Abb. Ct. App. Dec.*, 428), has established a different rule on the subject.

32

· This brings me to another point, the effect of which · is to deprive me of jurisdiction to consider the claims of all, except that of Menk, provided they can, in any just sense, be regarded as claims against the deceased. They are disputed. Having been sworn to on the part of these claimants, and the executors showing that in good faith there exists a question affecting their validity, my functions cease. (*Dayton's Surr.*, 553 ; Magee *v.* Vedder, 6 *Barb.*, 352.) As to the claim of Menk, although not contested by the executor, still, as consent cannot confer jurisdiction, it must fall with the others. If Menk be the executor of that name, I think him entitled to subrogation in so far only as to · acquire the lien upon the land created by the taxes.

Had all of these mortgagees entered judgment for deficiency, they could then have come in with the other creditors and shared with them equally in the assets. Those of them who have obtained such judgments may avail themselves of that right.

To recapitulate, I determine, then : 1st, that I have no power to direct a substitution or to subrogate one person to the rights of another in such a case as this ; 2d, that I have no power to adjudicate a disputed · claim, whether the dispute concern a question of law or of fact ; and, 3d, that the claimant Menk, if the executor, must fail, for the reason above stated. There is another ground for the rejection of the claim of Leviness ; the tax was not assessed prior to the death of the testator. Independent of that fact, it should be rejected on the other grounds.

Decree accordingly.